IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MARY PHILLIPA SLEDGE, MARY JANE PIDGEON SLEDGE TRUST, and PIDGEON SLEDGE FAMILY LIMITED PARTNERSHIP,<br><br>          Plaintiffs,<br><br>v.<br><br>INDICO SYSTEM RESOURCES, INC. and CLEAL WATTS, III<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)    Case No. 2:13-cv-2578<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendants Indico System Resources, Inc. and Cleal Watts, III, ("Defendants"), by and through counsel for this limited purpose, pursuant to Federal Rule of Civil Procedure 12(b)(2), respectfully submit to this Court this Memorandum in Support of their Motion to Dismiss Plaintiffs' Complaint for lack of personal jurisdiction. In support of their Motion, Defendants state:

### BACKGROUND

Plaintiffs Mary Phillipa Sledge, Mary Jane Pidgeon Sledge Trust, and Pidgeon Sledge Family Limited Partnership ("Plaintiffs") filed a civil action in this Court against Defendants Indico System Resources, Inc. ("ISR") and Watts, in his individual capacity on July 29, 2013. (D.E. 1). Watts is the President of ISR, a company in the business of consigning unrefined, raw

1

gold ore, dust. (Affidavit of Cleal Watts, III, hereinafter "Watts Aff.," ¶ 3.)[1] Both Defendants were served with Plaintiffs' Complaint on October 29, 2013. (D.E. 7-8.)

In their Complaint, Plaintiffs allege that Defendants engaged in "a fraudulent scheme" upon them which involved the "solicitation of approximately $5 million to purchase alleged gold dust mined in Ghana." (Compl. ¶ 13.) Based on these allegations, Plaintiffs assert claims for 1) fraud, 2) conversion, trover and misappropriation, 3) negligent misrepresentation, 4) violation of the Tennessee Consumer Protection Act ("TCPA"), 5) violation of § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, 6) violation of § 20(a) of the Securities and Exchange Act of 1934, 7) claims under § 12(1) of the Securities and Exchange Act of 1933, 8) breach of contract, 9) breach of fiduciary duty, 10) negligence, 11) fraudulent conveyance, and 12) punitive damages. (*See* Compl. ¶¶ 40-109.)

## SUMMARY OF ARGUMENTS

The Plaintiffs' Complaint should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) because neither Defendant has sufficient minimum contacts with the State of Tennessee. ISR is a Texas corporation with its principal place of business located in Dallas, Texas. (Compl., at ¶ 6; Watts Aff. ¶ 17.)  ISR is not registered to do business or have an office or any employees or agents in this forum state, nor does it own, use, lease, or possess any real property in Tennessee. (Watts Aff. ¶¶ 18-20.) ISR does not conduct business, perform any work, provide any services, target or solicit business from any market in the state of Tennessee. (Watts Aff. ¶¶ 21-22.) Likewise, Watts, the President of ISR, is a resident

---

[1] Cleal Watts, III's Affidavit is attached hereto as <u>Exhibit A</u>. "It is axiomatic that the court may consider affidavits submitted in connection with a motion to dismiss for lack of personal jurisdiction without converting the motion into a motion for summary judgment." *Guest v. Provident Funding Associates*, No. 3:12-cv-224, 2013 WL 1003524, *2 n. 1 (S.D.Ohio Mar. 13, 2013).

of Texas. (Compl. ¶ 5; Watts Aff. ¶ 1.) Watts, in fact, had never even been to Tennessee as a destination prior to this lawsuit. (Watts Aff. ¶ 10.)

Most importantly, Plaintiff Mary Phillipa Sledge ("Ms. Sledge") first approached Watts with an interest in ISR's business after being referred to him by her friend, William Hamilton, a resident of Texas. (Compl. ¶ 16; Watts Aff. ¶¶ 5-6.) At that time, Ms. Sledge was a resident of Kentucky and asked Watts to communicate with her via a telephone number with an area code serving the state of Kentucky. (Watts Aff. ¶ 9.) The undisputed evidence shows that this Court does not have personal jurisdiction over Defendants ISR or Watts, and Plaintiffs' cause of action should be dismissed.

## LEGAL STANDARD

"In diversity actions, federal courts apply state law to determine questions of personal jurisdiction." *Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 309 (6th Cir. 2007)(*citing Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005)). This Court "may maintain jurisdiction over a non-resident defendant only in accordance with the forum state's long-arm statute and the limitations of the Due Process Clause of the United States Constitution." *Williams v. FirstPlus Home Loan Owner Trust 1998-4*, 310 F.Supp.2d 981, 991 (W.D. Tenn. 2004) (*citing Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 110, 115 (6th Cir. 1994); *Procter & Gamble Cellulose Co. v. Viskoza-Loznica*, 33 F.Supp. 2d 644, 660 (W.D. Tenn. 1998)). When a plaintiff asserts subject matter jurisdiction of this Court based on federal question jurisdiction, personal jurisdiction exists "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would deny the defendant[] due process." *Bridgeport Music, Inc. v. Still N The Water Pub*, 327 F.3d 472, 477 (6th Cir. 2003) (*quoting Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). "In

Tennessee, the long-arm statute extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause." *Williams v. Firstplus Home Loan Owner Trust 1998-4*, 310 F.Supp.2d at 990, (*citing* Tenn. Code Ann. §20-2-214(a)(6) (2004)). "Therefore, the Court need only determine whether the assertion of personal jurisdiction . . . would violate the Due Process Clause." *Id*. (*citing Williams v. FirstPlus Home Loan Trust 1996-2*, 209 F.R.D. 404, 410 (W.D. Tenn. 2002)).

The plaintiff bears the burden of establishing that the Court has jurisdiction over a defendant. *American Copper & Brass, Inc. v. Mueller Europe, LTD*., 452 F.Supp.2d 821, 825-26 (W.D. Tenn. 2006)(*citing Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *Serras v. First Tenn. Bank Nat'l Assoc*., 875 F.2d 1212, 1214 (6th Cir. 1989)). In the absence of jurisdiction over a defendant, a particular court cannot adjudicate a legal dispute between the parties. *Id*. (*citing Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 889, 903 (6th Cir. 2006)).

When a defendant challenges a trial court's personal jurisdiction over the defendant, and supports the motion with affidavits, "a plaintiff must establish a prima facie showing of jurisdiction by responding with affidavits, and if useful, other written evidence, and may not stand on the pleadings alone." *Id*. (*quoting McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936) (quotation omitted); *Posner v. Essex Ins. Co*., 178 F.3d 1209, 1214 (11th Cir. 1999)) ("Plaintiff bears the burden of proving by affidavit the basis upon which jurisdiction may be obtained . . . if the defendant challenging jurisdiction files affidavits in support of his position."); *Theunissen*, 935 F.2d at 1458 ("[P]laintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing the court has

4

jurisdiction.").[2]

"Personal jurisdiction may be either 'general' or 'specific.'" *Intera Corp.*, 428 F.3d at 616 (*quoting Bird v. Parsons*, 289 F.3d at 873). "General jurisdiction exists when a defendant's 'contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Id*. (*quoting Bird*, 289 F.3d at 873). In contrast, a trial court's exercise of specific jurisdiction over a defendant is proper only "where the claims in the case arise from or are related to the defendant's contacts with the forum state." *Id*. (*citing Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)). Moreover, "the contacts of each defendant must be assessed individually." *Williams*, 310 F.Supp.2d at 992 (*citing Rush v. Saychuk*, 444 U.S. 320, 332 (1980)).

## LAW AND ARGUMENT

The Court lacks personal jurisdiction over Defendants because neither ISR nor Watts have sufficient minimum contacts with the State of Tennessee to subject them to the Court's jurisdiction. Likewise, this Court does not have personal jurisdiction via the nationwide-service-of-process provision in the Securities and Exchange Act of 1934.

### I. No personal jurisdiction exists over ISR.

#### A. *No General Jurisdiction Exists Over ISR.*

For this Court to have general jurisdiction over ISR, Plaintiffs must prove that ISR maintains "continuous or systematic" contacts with the state of Tennessee. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). Plaintiffs cannot show that Tennessee has general jurisdiction over ISR because ISR does not have any personal contacts with Tennessee.

---

[2] "[A]ny matter ... required or permitted to be supported, evidenced, established, or proved by ... affidavit ... may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration ... in writing of such person which is subscribed by him, as true under penalty of perjury, and dated...." 28 U.S.C. § 1746 (2006).

The United States Supreme Court described the type of contacts with a forum state that it considered "continuous and systematic" in *Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516 (1923) and in *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 420-21 (1984). In *Rosenberg*, the sole issue was whether or not the defendant's contacts with the forum were sufficient to warrant the exercise of in personam jurisdiction. *Id*. at 517. The defendant was an Oklahoma retail dealer in men's clothing whose connections with the forum consisted of regular purchases of merchandise from sources in New York. *Id*. at 518. In determining that the defendant's contacts with the forum were insufficient to justify the exercise of in personam jurisdiction over the defendant, the Court said:

> The only business alleged to have been transacted by the company in New York, either then or theretofore, related to such purchases of goods by officers of a foreign corporation. Visits on such business, even if occurring at regular intervals would not warrant the inference that the corporation was present within the jurisdiction of the state.

*Id*.

*Rosenberg* was later reaffirmed in *Helicopteros*. 466 U.S. at 418. In *Helicopteros*, the defendant was sued in Texas and the plaintiffs' alleged general jurisdiction. *Id*. at 415. The extent of the defendant's contacts consisted of: a) the defendant's chief executive officer traveling to Texas to negotiate and enter into contracts in Texas, b) the defendant had purchased more than $4 million in helicopters and parts in Texas, c) the defendant had sent pilots to Texas for training and to and pickup aircraft, d) the defendant had sent management and maintenance personnel to Texas for plant familiarization and for technical consultation, and e) the defendant had received over $5 million in payments from a Texas bank. *Id*. at 412. In reviewing the defendant's contacts with the forum, the *Helicopteros* Court, relying on *Rosenberg*, determined that the defendant's contacts with the forum were neither continuous nor systematic and that the

defendant's contacts with the forum were "insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment." *Id*. at 418-19.

ISR's contacts with the State of Tennessee are neither continuous nor systematic under the standard described in *Helicopteros* and *Rosenberg* because they are negligible at best. ISR is a Texas corporation with its principal place of business located in Dallas, Texas. (Watts Aff. ¶ 17.) It does not own, use, lease, or possess any property in the State of Tennessee, has not conducted business or perform any work or provide any services in the State of Tennessee, does not have an office or employees or agents in the State of Tennessee, is not registered to do business in the State of Tennessee, nor does it target or solicit business from any market in the State of Tennessee. (Watts Aff. ¶¶ 18-22.) In fact, in either his capacity as President of ISR or individually, Watts has never come to Tennessee as a destination prior to this lawsuit. (Watts Aff. ¶ 10.) As the Supreme Court explained in *Helicopteros*, even a corporate officer's presence in the forum state for contract negotiations does not rise to the level of continuous and systematic activity. 466 U.S. at 412. Here, Watts never came to Tennessee to meet with Plaintiff Mary Sledge. (Watts Aff. ¶ 7.) No contracts were executed in Tennessee. (Watts Aff. ¶ 25.) Quite the contrary, any agreement between Plaintiffs and ISR was consummated when Plaintiffs wired money into ISR's account in Texas. (Watts Aff. ¶ 26.) ISR has no continuous and systematic contacts with the State of Tennessee. Based on these facts, ISR cannot be subject to the general jurisdiction of this Court.

      B.    *No Specific Jurisdiction Exists Over ISR.*

ISR similarly does not have personal contacts with the State of Tennessee sufficient to prove that this Court has specific jurisdiction over it. When a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the

7

forum, the state is exercising "specific jurisdiction" over the defendant. *Helicopteros*, 466 U.S. at 414, n. 9. The essential consideration in determining specific personal jurisdiction is the "relationship among the defendant, the forum, and the litigation." *Id.*; *quoting Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

More specifically, the Sixth Circuit has developed a "three-part test for determining when the exercise of specific personal jurisdiction is appropriate in the absence of a continuous relationship between the forum and the defendant." *Payne v. Motorists Mut. Ins. Co.*, 4 F.3d 452, 455 (6th Cir. 2003). The so-called 'outer limits of *in personam* jurisdiction based on a single act' are as follows:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (*quoting Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1988)).

Applying the three-part test to this case, ISR's contacts with the State of Tennessee are insufficient for this Court to exercise specific personal jurisdiction over it for several reasons. First, ISR has not purposefully availed itself of acting within the state, "the *sine qua non* for in personam jurisdiction." *Lak, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1300 (6th Cir. 1989). The Sixth Circuit has found where communications were initiated by plaintiffs and alleged contacts to the forum state were made in response to those plaintiffs' actions, there is no purposeful availment because the defendant's alleged contacts occurred solely because plaintiffs chose to be in the forum state. *See Rice v. Karsh*, 154 Fed. Appx. 454, 462-63 (6th Cir. 2005) (finding, where plaintiffs alleged fraudulent misrepresentation, there was no purposeful availment due to the fact that "[Defendant's] phone, mail and e-mail contacts with [Plaintiffs] in

8

Tennessee occurred solely because [Plaintiff], although a Texas corporation, chose to have offices in Tennessee, not because [Defendant] sought to further his personal business or to create 'continuous and substantial' consequences there"); *see also Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (no purposeful availment where defendant's alleged contacts to forum state occurred solely due to plaintiff's decision to be headquartered in forum state and performance of defendant's part of the agreement was not focused on exploiting any market in the forum state). Here, Plaintiffs sought out ISR; Plaintiff's friend, William Hamilton, a Texas resident, referred Plaintiff Sledge to Watts. (*See* Compl. ¶ 16; Watts Aff. ¶ 6.) Plaintiff Sledge initiated communications with ISR and Watts. (Watts Aff. ¶ 5.) Moreover, when Plaintiff Sledge first initiated conversations, she resided in Kentucky and requested that Watts contact her at a phone number with an area code serving Kentucky. (Watts Aff. ¶ 9.) No officer or executive of ISR ever traveled to Tennessee at any time to engage in any business discussions with Plaintiffs. (*See* Watts Aff. ¶ 7.)

Plaintiffs allege that communications via telephone calls and emails were sent from Watts to Plaintiffs while they were in Memphis, Tennessee, but "the use of interstate facilities such as the telephone . . . is a secondary or ancillary factor and cannot alone provide the minimum contacts required by due process." (Compl. ¶ 35.); *Reynolds*, 23 F.3d at 1119; (internal citations omitted); *see, e.g.*, *Market/Media Research v. Union Tribune Pub.*, 915 F.2d 102, 105 (6th Cir. 1991) (telephone calls and mail sent to Ohio insufficient for personal jurisdiction). Moreover, many of the communications were made in response to Plaintiffs which would not count as contacts of ISR. *See Perkins v. Bennett*, No. 3:13-CV-695, 2013 WL 6002761, *9 (W.D.Ky. Nov. 12, 2013) ("[I]t appears to this Court that many of the Defendants' contacts with Kentucky are tied to [Plaintiff's] efforts to contact Defendants, which 'would not logically count

9

as a contact of Defendants with the state.'").

Plaintiffs also allege that wire transfers were received by ISR from their bank accounts in Tennessee, but similarly, this alleged contact cannot constitute purposeful availment. In *Harris v. Lloyds TSB Bank, PLC*, 281 Fed. Appx. 489, 495 (6th Cir. 2008), the Sixth Circuit explicitly found that "wire transfers accepted or confirmed by Lloyds from Tennessee and any wire transfers originated by Hogsed in the United Kingdom and sent to Tennessee <u>cannot constitute</u> purposeful availment, because none of those transfers were initiated by Lloyds." (emphasis added). In making its determination, the Sixth Circuit cited to its previous decisions in which the basis for finding no purposeful availment was the underlying principle that defendants could not fairly be haled into litigation in the forum state when their contacts were solely based on the plaintiff's decision to be located in that state. *See id.*

Furthermore, Plaintiffs allege that "Soft Corporate Offers" were signed by Plaintiffs in Tennessee and identified Plaintiffs with Tennessee addresses, but ISR never received any of these executed agreements. (Compl. ¶ 34; Watts Aff. ¶ 10.) To the extent Plaintiffs rely on these agreements to establish personal jurisdiction over ISR, they cannot do so because any agreement between the parties arose when Plaintiffs wired money into ISR's accounts, not when Plaintiffs executed an agreement which was never returned to ISR. (*See* Watts Aff. ¶ 10.) Based on the foregoing, to the extent ISR has any contacts with Tennessee whatsoever they are "random," "fortuitous," and "attenuated" contacts that the Supreme Court rejected in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), as a basis for haling non-resident defendants, such as ISR, into foreign jurisdictions.

Having established that ISR did not purposefully avail itself of acting in this state and was, instead, fortuitously brought to this forum state by virtue of Plaintiffs' unilateral decision to

be in Tennessee, the inquiry of specific personal jurisdiction stops here. *See Rice v. Karsch*, 154 Fed. Appx. at 464 ("because this Court finds that the Plaintiffs-Appellants have not satisfied the first element, we will not address the second and third criteria"). Nonetheless, Plaintiffs' claims do not arise out of ISR's activities in Tennessee. The causes of action in this case arise from ISR's alleged actions or inactions to supply Plaintiffs with gold ore, dust, and the majority of the performance of this agreement would take place in Africa, not Tennessee. (*See* Compl. ¶ 19.)[3] Moreover, Plaintiffs wired money into ISR's accounts in Texas to start the transaction, and, thus, any alleged fraudulent claims would have arisen in Texas, not Tennessee.

    Similarly, the Court may rest once it finds that there is no purposeful availment such that analysis of the third prong is not necessary; even so, the Court's exercise of specific jurisdiction over ISR would not be reasonable. Reasonableness is analyzed by utilizing the following four factors: 1) burden on the nonresident defendant; 2) the forum state's interest; 3) the plaintiff's interest in obtaining relief; and 4) other states' interest in securing the most efficient resolution of the controversy. *See Intera*, 428 F.3d at 618.

    ISR's only remote connection with the State of Tennessee is Plaintiffs' wiring of money out of a Tennessee bank into ISR's account located in Dallas, Texas, handful of telephone calls to a Tennessee number only after Plaintiff Mary Sledge started contacting ISR with that number, and an implicit agreement with an alleged Tennessee resident. A contract with an out-of-state party standing alone, however, is not sufficient to establish minimum contacts, *see*, *Burger King*, 471 U.S. at 478, and it is equally unreasonable to subject a defendant to jurisdiction in a foreign state when its contacts are solely the result of Plaintiff's decision to be in the forum state.

---

[3] Paragraph 19 of the Complaint contains further allegations which Defendants do not admit. To the extent citation to this paragraph of the Complaint could constitute some sort of admission, the remaining allegations contained in Paragraph 19 of the Complaint are denied.

*See, e.g.*, *Harris v. Lloyds TSB Bank, PLC*, 281 Fed. Appx. at 496.  Thus, in sum any argument Plaintiffs might make to subject ISR to the Court's specific jurisdiction comes down to an assertion based on Plaintiff Mary Sledge's unilateral move to her residence in Tennessee. Personal jurisdiction is not based on plaintiff's residence nor would such a basis be consistent with due process requirements. *Speckine v. Stanwick Int'l, Inc.*, 503 F.Supp. 1055, 1059 (W.D. Mich. 1980) (holding that court lacked jurisdiction over defendant when "plaintiff's arguments come down to an assertion that jurisdiction over the defendant should be based on plaintiff's residence").

Ultimately, the "constitutional touchstone" of a determination of either general or specific personal jurisdiction is fairness.  Forcing ISR to answer this lawsuit in Tennessee is fundamentally unfair given the attenuated nature of its contacts with the State.  ISR had no expectation of being "haled into court" in Tennessee when it entertained conversations with a Kentucky resident turned Tennessee resident.  Therefore, Plaintiffs' Complaint against ISR should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

> **II.     The Court does not have personal jurisdiction over Watts because he does not have sufficient minimum contacts with the State of Tennessee.**
>
> A.     *No General Jurisdiction Exists over Hensley.*

Watts as an individual has no connection to Tennessee.  He does not live in Tennessee, and he does not visit Tennessee. (*See* Watts Aff. ¶¶ 1 & 10.)  Watts does not own, use, lease, or possess any real property in Tennessee, nor does he have a bank account or any other known asset in Tennessee. (Watts Aff. ¶ 12.)  Watts does not have an office in Tennessee nor has he ever performed any work or provided services in Tennessee, in any capacity.  (Watts Aff. ¶¶ 13-14.)  He has never even been to Tennessee as a destination prior to this lawsuit. (Watts Aff. ¶ 10.) His relationship to and contacts with Tennessee cannot be considered "continuous and

12

M MXW01 2448761 v1
0-0  12/03/2013

systematic." In fact, they are anything but continuous and systematic; they are non-existent. In short, there is no basis for an assertion of general jurisdiction by this Court over Watts.

    B.  *No Specific Jurisdiction over Watts Exists.*

In the present matter, there is no evidence to support a finding of specific jurisdiction over Watts. Watts has never purposefully availed himself individually of the privilege of acting in the forum state. In fact, he has never been to Tennessee in his individual capacity, on vacation or otherwise, and has no connection to the State of Tennessee at all. (*See* Watts Aff. ¶ 10.) In general, jurisdiction over corporate officers in their official capacity may not be conferred merely upon jurisdiction over the corporation. *See Balance Dynamics Corp. v. Schmitt Industries, Inc.*, 204 F.3d 683, 698 (6th Cir. 2000). Moreover, the specific jurisdiction analysis for ISR applies equally to Watts, and thus, there can be no specific jurisdiction over Watts because he did not purposefully avail himself to act in Tennessee when he merely responded and reacted to Plaintiff Sledge who happened to reside in Tennessee after first contacting him with a Kentucky number. (Watts Aff. ¶ 9.)

Watts could not reasonably anticipate being haled into court in Tennessee solely based upon the actions of ISR, and any connection he may have to Tennessee are random, fortuitous, and attenuated at best. Litigating this matter in Tennessee would impose a great burden on Watts, a Texas resident. (*See* Watts Aff. ¶ 1.) Therefore, Watts does not have minimum contacts with the State of Tennessee such that an exercise of jurisdiction over him would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In sum, Plaintiffs' Complaint against Watts should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

M MXW01 2448761 v1
0-0 12/03/2013

### III. Personal jurisdiction is not established on either Defendant under the nationwide-service-of-process provision in the federal securities laws.

Admittedly, the Securities Act of 1933 and the Securities and Exchange Act of 1934 both contain a provision which allows for nationwide service of process and courts have found that such provision establishes personal jurisdiction. However, Defendants maintain that these provisions have no application in this case; therefore Plaintiffs cannot establish personal jurisdiction because Plaintiff fails to state a claim under these federal securities laws.

It is well-established that special service provisions of federal statutes cannot be used to establish personal jurisdiction unless the plaintiff has "adequately stated a claim" for a violation of that statute. *Indah v. S.E.C.*, 661 F.3d 914, 922 (6th Cir. 2011) (rejecting plaintiffs' argument asserting personal jurisdiction over defendants based on special service provision in 1934 Act because plaintiffs had failed to state a claim under the Act); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993); *see also NGS Am., Inc. v. Jefferson*, 218 F.3d 519 (6th Cir. 2000). Plaintiffs have not adequately stated a claim for violation of these Acts because trade of gold ore, dust, is not a security within the meaning of either statute.

> A security is:
>
> Any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security (including a certificate of deposit) or on any group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C. § 80a-3 (2013).[4]

The transaction at issue in this case does not fall within any category of this definition. This type of transaction is best characterized as trade of a commodity which is not regulated by the Securities Exchange Commission. Commodities are not considered securities. *See Curran v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 622 F.2d 216, 220 (6th Cir. 1980).

The most generous and only conceivable category under this definition for Plaintiffs to assert the applicability of federal securities law would be "investment contract," but under the *Howey* test, Plaintiffs cannot assert that the type of transaction at issue is contemplated by these laws. Under the *Howey* test, a court determines "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). In *S.E.C. v. Belmont Reid & Co., Inc.*, the Ninth Circuit explicitly held that prepayment plans to purchase gold coins were not securities within the meaning of the federal security laws because the profits to the coin buyer "depended upon the fluctuations of the gold market" and the anticipated increase in the world price of gold, and not the managerial efforts of the defendant. 794 F.2d 1388, 1391 (9th Cir. 1986). Likewise, numerous courts have found where expected profits come from market fluctuations, those transactions were not securities within the meaning of the federal securities laws. *See Noa v. Key Futures, Inc.*, 638 F.2d 77, 79 (9th Cir. 1980) (purchase of silver bars not a security because profits depended upon the fluctuations of the silver market); *Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F.Supp. 359, 367 (S.D.N.Y. 1966) (finding "[t]he mere presence of a speculative motive on the part of the purchaser or seller does not evidence the existence of an

---

[4] The definitions of a "security" under either Act are virtually the same. *S.E.C. v. Belmont Reid & Co., Inc.*, 794 F.2d 1388, 1390 (9th Cir. 1986).

15

'investment contract' within the meaning of the securities acts"). These transactions do not meet the *Howey* test because expected profits come strictly from market fluctuations.

Plaintiffs have failed to adequately state a claim under these federal securities statutes because those laws do not apply to the transactions at issue. Consequently, Plaintiffs may not utilize the nationwide-service-of-process provisions contained within those statutes. Plaintiffs cannot establish personal jurisdiction over either Defendant pursuant to these federal statutes.

## CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiffs' Complaint against ISR, Inc. and Cleal Watts for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

Respectfully Submitted,

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC


/s/ Bruce A. McMullen
Bruce A. McMullen (#18126)
Lori Patterson (# 19848)
Mary Wu (#31339)
165 Madison Ave, Suite 2000
Memphis, Tennessee 38103
(901) 526-2000
bmcmullen@bakerdonelson.com
mwu@bakerdonelson.com

*Attorneys for Defendants*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of December 2013, a copy of the foregoing electronically filed document was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Darrell N. Phillips
Pietrangelo Cook PLC
6410 Poplar Avenue, Suite 190
Memphis, TN 38119
901-685-2662

/s/ Bruce A. McMullen
Bruce A. McMullen