IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MARY PHILLIPA SLEDGE, MARY JANE PIDGEON SLEDGE TRUST, and PIDGEON SLEDGE FAMILY LIMITED PARTNERSHIP, <br>　　　　Plaintiffs, <br><br>v. <br><br>INDICO SYSTEM RESOURCES, INC. and CLEAL WATTS, III <br><br><br>　　　　Defendants. | ) ) ) ) ) ) ) Case No. 2:13-cv-2578 ) ) ) ) ) ) ) |

**DEFENDANTS' REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants Indico System Resources, Inc. and Cleal Watts, III, ("Defendants"), by and through counsel for this limited purpose, pursuant to Local Rule 12.1(c), respectfully submit to this Court this Reply to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss for lack of personal jurisdiction. In reply, Defendants state:

### I. Plaintiffs have not met their burden of proof.

"The burden of establishing the existence of personal jurisdiction lies with the party asserting such jurisdiction." *Jowers v. Beck*, No. 1:09-cv-1131-JDB-egb, 2010 WL 455280, *2 (W.D. Tenn. Feb. 2, 1010) (*citing Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). Admittedly, in the absence of an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction, but she must establish jurisdictional facts through sworn testimony and competent evidence. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th

1

Cir. 1998). "Once the motion is made, plaintiff must respond with <u>actual proofs</u>, not <u>mere allegations</u>." *Jowers v. Beck*, 2010 WL 455280, at *2-3, (*citing Machulsky v. Hall*, 210 F.Supp.2d 531, 537 (D.N.J. 2002) and *Mende v. Milestone Tech., Inc.*, 269 F.Supp.2d 246, 251 (S.D.N.Y. 2003) (stating that conclusory allegations are insufficient to establish personal jurisdiction)) (emphasis added).

Here, Plaintiffs offer no competent evidence that this Court has personal jurisdiction over Defendants.[1] Instead, Plaintiffs put forth conclusory allegations that Defendants called or emailed Plaintiffs in Tennessee and that Defendant Watts made representations that Watts knew were false when making them, but offers no evidentiary support beyond her bald assertions. Moreover, Plaintiff Sledge mischaracterizes many of the emails that were attached to her Declaration, providing insufficient evidence to validate her claims.[2]

Defendants do not assert that Plaintiff Sledge was a Kentucky <u>citizen</u> or <u>resident</u> at the time of the parties' interactions, but simply use her contacts with the state of Kentucky, and presence therein, to demonstrate that Defendants did not know, and could not be expected to know, where Plaintiff Sledge would be receiving calls or emails from Defendants such as to purposefully direct Defendants' activities into Tennessee. For example, Plaintiff Sledge admits that she gave Defendant Watts her Kentucky phone number and told him that she went to Kentucky regularly. (Sledge Dec. 4, ECF No. 14.) Moreover, in the signature block of her Gmail

---

[1] It must be noted that Plaintiffs do not argue that this Court has general jurisdiction over Defendants. Their Response focuses on the analysis of whether this Court has specific jurisdiction over Defendants. *See* Pls.' Resp., ECF No. 12 Thus, Plaintiffs must necessarily be conceding that this Court does not have general jurisdiction over Defendants.

[2] Plaintiff Sledge's mischaracterizations are too numerous to mention in this 10-page Reply, but Defendants urge the Court to take a closer look at Plaintiff Sledge's declaration and the exhibits in support. One such example of mischaracterization is Paragraph 21 of Plaintiff Sledge's declaration where she states that an attachment to the email "lists" her residence as being in Memphis, Tennessee, but the attachment is merely a list of wire transfers going to Defendants' account in Dallas, Texas, and in fact, shows at least one wire transfer via "B/O: Mary Phillipa Sledge Louisville" on November 23, 2011. (Sledge Dec. ¶ 21, ECF No. 14.)

account, she provides a Kentucky phone number as her primary contact information.[3] Finally, some of the emails attached to Ms. Sledge's Declaration show that multiple wire transfers to Defendants were being sent from Plaintiff's bank in Louisville, Kentucky. (*See, e.g.*, Sledge Dec. 37, ECF No. 14.) In the face of this proof, Plaintiffs have not demonstrated that Defendants purposefully directed communications into the forum state. Instead, this proof demonstrates that Defendants were likely unaware of Plaintiff Sledge's whereabouts at any given time. Plaintiffs' burden of proof, "slight" as it may be for a prima facie showing, has not been met, and Plaintiffs have not established that this Court has jurisdiction over the non-resident Defendants.

## II. Plaintiffs' "evidence" of Defendants' "contacts" with the state of Tennessee is insufficient to establish personal jurisdiction.

In Plaintiff Sledge's Declaration, Plaintiffs attempt to proffer "evidence" that Defendants' emails and phone calls are sufficient to establish personal jurisdiction. In reality, Plaintiffs offer no more than conclusory allegations that Defendants "knew" Plaintiff Sledge was in Tennessee when she received these communications. Further, given one's ability to access electronic and cellular communications anywhere, emails and calls to cellular phone numbers are insufficient to establish jurisdiction. Likewise, wire transfers sent into a state where a plaintiff chooses to have a bank account cannot constitute purposeful availment.

In fact, the Sixth Circuit has instructed as follows with regard to whether jurisdiction could be exercised over a foreign defendant who sent emails to the plaintiff with the email address pfrracing@yahoo.com:

> There is nothing about this email address which indicates that Rice would have accessed his yahoo.com email account or otherwise read this email in Tennessee. Finding personal jurisdiction over an individual merely because he sends an email to a generic email address is incomprehensible to this court. If such reasoning were adopted by this Court, Karsch would be subject to personal jurisdiction in

---
[3] Defendant Watts's Declaration is attached as Exhibit 1 to this Reply.

> any location where said email address could be accessed, i.e., in *every* state regardless of whether the sender had any other contacts with that forum. Clearly, this was not the result intended by *Neal* or the prior cases discussing communications.

*Rice v. Karsch*, 154 Fed. Appx. 454, 462 (6th Cir. 2005). Similarly, citing to *Rice v. Karsch*, the Northern District of Ohio held that emails sent to "johnlbrutz@gmail.com" were insufficient to show purposeful availment to transact business in the state of Ohio. *Brutz v. Stillwell*, No. 1:09 CV 2564, 2010 WL 1924471, *11 (N.D.Ohio May 12, 2010).

In the present case, Defendant Watts sent emails to Plaintiff Sledge's email addresses at "mpsjazzman@aol.com" or "mpsjazzman@gmail.com," neither of which gives any indication that Ms. Sledge would have accessed these accounts or otherwise read these emails in Tennessee. (*See* Watts Dec. ¶ 5, attached hereto as <u>Exhibit 1</u>.) In fact, Plaintiff Sledge sometimes included a signature block in her email responses that contained a Kentucky cell phone number as a contact number. (*See* Watts Dec. ¶ 10.)

In the same vein, Defendants should not be haled into this Court by virtue of Plaintiffs' claim that calls were made to Plaintiff Sledge's cellular phone.[4] Such calls, which may be received in virtually any state, are insufficient to establish personal jurisdiction. Like emails, which are transient in nature, calls made to cellular numbers cannot establish any purposeful direction of activities into the forum state. In *Randall v. Davin*, the Western District of Pennsylvania held that:

> [Defendant] cannot be found to have purposefully directed his activities at this jurisdiction by placing a cellular telephone call or sending an email when [Defendant] had no control over whether [Plaintiff] received it in Cleveland, Ohio, Pittsburgh, Pennsylvania, Knoxville, Tennessee, or somewhere else. The cellular phone and email communications between [Plaintiff and Defendant] at

---

[4] In Plaintiff Sledge's Declaration, she does not specify what number Defendant Watts called to reach her when she asserts that he placed calls to her in Tennessee. The only number Plaintiff lists as a number which Watts called her on is a "901" number which is a Verizon wireless mobile number. (Sledge Dec. ¶ 6, ECF No. 13-1.)

4

> those times when [Plaintiff] happened to be located at his home office in Pittsburgh, Pennsylvania are insufficient, without more, to establish that this court has personal jurisdiction over [Defendant] in this case.

No. 13-703, 2013 WL 6191344, *4 (W.D.Pa. Nov. 26, 2013).

In this particular case, it is even more apparent that Plaintiff Sledge may have received calls placed to her mobile numbers in states outside of Tennessee, given that Plaintiff Sledge has substantial connections with and often visits the state of Kentucky. In fact, in at least one email, Ms. Sledge refers to her travels to Louisville as "home." (Watts Dec. ¶ 9.) Thus, Defendants cannot be found to be purposefully directing communications into the forum state when Plaintiff Sledge has not established that she received these communications in Tennessee or that Defendants knew she was in Tennessee when she was receiving these communications.

Likewise, wire transfers from Defendants into the forum state are insufficient to establish personal jurisdiction when the transfers were initiated by the Plaintiff. (*See* Memo. in Support of Mtn. to Dis. 10, ECF No. 11-1.) In this case, Plaintiff Sledge admits that she "requested small 'loans,' and Watts arranged for funds to be transferred to the accounts she requested."[5] (*See* Sledge Dec. ¶ 38, ECF No. 14.) Such transactions cannot be used as the basis for jurisdiction when there is affirmative proof that the wire transfers came at the request of the Plaintiff into the state of Plaintiff's choosing.

Plaintiffs' "prima facie" showing of jurisdiction fails because none of the Defendants' alleged contacts with the state of Tennessee are sufficient to establish jurisdiction. "It is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident." *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 n.6 (8th Cir. 1977) (emphasis supplied). Since there is no

---

[5] Plaintiff Sledge avers that Defendant Watts wired funds into an account labeled "Chase - Memphis," but Defendants note that no Chase bank is physically located in Memphis, Tennessee. (Sledge Dec. ¶ 31, ECF No. 14.)

purposeful availment to transact business in Tennessee, Defendants will not expound on the remaining factors of the *Mohasco* test in this Reply, beyond averring that Plaintiffs have similarly failed to establish these two factors as well.[6]

### III. *Rice* is analogous and *Neal* is distinguishable.

Plaintiffs attempt to distinguish *Rice* from the present case and argue that *Neal* is controlling. A closer analysis, however, shows that the facts of this case are more analogous to *Rice,* wherein the Court found that allegations of fraudulent representations into the forum state through phone calls and emails were insufficient to establish personal jurisdiction over a defendant who had no other contacts with the state of Tennessee.

*Neal* is factually distinguishable, most notably, because the defendant had no indication that the plaintiffs were not located in Tennessee. *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001). Unlike *Neal*, the forms of communication utilized in this case --cellular calls and emails-- are easily accessible from any state. Moreover, there are numerous indications that Plaintiff Sledge was in Kentucky at various points during the parties' communications. Unlike the plaintiffs in *Neal*, Plaintiff Sledge has not made a prima facie showing that Defendants knew she was in Tennessee (or that she even actually was in Tennessee) when she received the allegedly fraudulent communications. Moreover, in *Neal*,[7] the communications that allegedly formed the basis of the lawsuit were verifiably false representations made knowingly by the defendant. Here, Defendant Watts has affirmatively declared that he did not knowingly send any fraudulent documents to Plaintiffs. (Watts Dec. ¶¶ 6-8.) Instead, at worst, he merely forwarded emails that

---

[6] Defendants also refer this Court to its argument on the remaining factors of the test as set out in *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1988) in their original Motion to Dismiss.

[7] In *Neal*, the communication at issue was the price of the sold horse, which was clearly different and higher than the dealer represented to the plaintiffs. *Neal v. Janssen*, 270 F.3d at 330.

contained these attachments. *Id.* Defendant Watts had no hand in their creation and he has no knowledge of their veracity or otherwise. *Id.*

Unlike *Neal*, *Rice* is factually similar to the present case. In *Rice*, the plaintiffs alleged that the defendant made representations to them in Tennessee which the defendant knew to be false. 154 Fed. Appx. at 461. Nonetheless, the Sixth Circuit found that there was no jurisdiction over the non-resident defendant because there was no indication that the defendant knew or should have known she was communicating into Tennessee. *Id.* Moreover, since *Rice* is a more recent decision, it takes into account the increasingly transient nature of electronic communications and its effects on the purposeful component of specific jurisdiction in cases where the communications purportedly form the basis for the action. This Court should follow *Rice* and find that there is no jurisdiction over Defendants.

### IV. Plaintiffs' agreement to purchase gold dust does not constitute a security under federal securities law.

Plaintiffs have also claimed that this Court may exercise personal jurisdiction over Defendants pursuant to the federal securities laws' nationwide service of process provisions. While it is true that an action for the violation of the federal securities acts may be brought in any federal district court against a defendant with minimum contacts of the United States, Plaintiffs' agreement to purchase gold dust did not involve the sale or purchase of a "security" as that term has been defined by the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit. *See Securities and Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946); *Deckebach v. La Vida Charters, Inc. of Florida*, 867 F.2d 278, 271 (6th Cir. 1989).

Plaintiffs apparently concede in their Response that their agreement to purchase gold dust could only be considered a security under the definition set forth in the federal securities laws if

it could be deemed to be an "investment contract." [8] Plaintiffs rely on the test set forth in *Howey* to assert that the contractual agreement to purchase gold at issue here constitutes an investment contract for the purpose of federal security laws. (Pls.' Resp. 18, ECF No. 13.) To satisfy *Howey*'s definition of an investment contract, three elements must be met: (1) an investment of money; (2) a common enterprise; and (3) an expectation of profits that will be derived solely from the efforts of others. *See Dechebach*, 867 F.2d at 281.

In arguing that the agreement to purchase gold dust in this case is a security, Plaintiffs discuss only the third prong of the *Howey* test, and make no effort to satisfy *Howey*'s other two requirements. Instead, Plaintiffs' sole argument as to why this purchase agreement should be deemed a security is their reliance on the Ninth Circuit case of *SEC v. R.G. Reynolds Enterprises, Inc.*, 952 F.2d 1125 (9th Cir. 1991) for the proposition that Plaintiffs' expectation of profits was derived solely from the efforts of others. However, even if Plaintiffs are correct in their argument on the third prong (which they are not for the reasons explained in the original Motion to Dismiss), Plaintiffs have made no effort to satisfy the first two prongs of *Howey*.

For the purposes of this argument only, Defendants will concede the first prong of *Howey* has been met, because taking the allegations of the Complaint as true, there has been a payment of money by the Plaintiffs. However, Plaintiffs have alleged no facts, nor have they even argued

---

[8] The Securities Act of 1933 and the Securities Exchange Act defines the term "security" to mean as follows:

> . . . any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

*See* 15 U.S.C. § 77b(1); 15 U.S.C. § 78c(a)(10).

any facts in their Response, upon which this Court could find a common enterprise. The United States Court of Appeals for the Sixth Circuit has construed the common enterprise element of the *Howey* test to require a demonstration of horizontal commonality. *Dechebach*, 867 F.2d at 281. The Sixth Circuit has specifically rejected the argument that *Howey*'s common enterprise element can be met by a demonstration of vertical commonality. Importantly, horizontal commonality requires that there be multiple investors who pool their funds, resulting in each having an undivided interest, such that all investors share in the profits and risks of the enterprise together. *S.E.C. v. SG Ltd.*, 265 F.3d 42, 50 (1st Cir. 2001).

Vertical commonality, on the other hand, requires only a showing of a common enterprise between the investor and the seller, promoter, or some other third party. *See S.E.C. v. R.G. Reynolds Enter., Inc.*, 952 F.2d 1125, 1130-31 (9th Cir. 1991). There is no requirement that there be multiple investors or any pooling of investor funds. Notably, the Ninth Circuit, in contrast to the Sixth Circuit, recognizes that *Howey*'s common enterprise element can be met by a showing of vertical commonality. Accordingly, in *R.G. Reynolds,* which is heavily relied upon by Plaintiffs, the Ninth Circuit recognized that the common enterprise element had been met via vertical commonality because the sponsor of the gold program took a management fee based on a percentage of the profit, making his own profit contingent on the profit of his investors. But the *R.G. Reynolds* court <u>declined</u> to find horizontal commonality, both because such a finding was unnecessary in the face of vertical commonality, and because it was not clear that any investor in the R.G. Reynolds gold scheme knew that their funds would be pooled with those other investors. *R.G. Reynolds Enterprises*, 925 F.2d at 1131.

Here, Plaintiffs have not even attempted to allege facts that could meet the horizontal commonality requirement. At best, Plaintiffs allege that they purchased gold dust and that they

9

planned to rely on the efforts of Defendants to refine the gold dust and sell it to realize their profits. While these allegations might allege vertical commonality, Plaintiffs have utterly failed to provide any facts upon which this court could make a prima facie finding of horizontal commonality. Plaintiffs have not alleged the existence of other unique investors, nor have they alleged that their funds were pooled with any other investors. Finally, even if they had alleged some sort of pooling, horizontal commonality requires more than pooling alone. "It also requires that investors share in the profits and risks of the enterprise" --an allegation utterly lacking in this case. *See S.G. Ltd.*, 265 F.3d at 50. Furthermore, Defendants state unequivocally that Plaintiffs' funds were not pooled with other investors in one common fund and that Plaintiffs' gold dust was completely severable from any gold dust that may belong to other purchasers. (Watts Dec. ¶¶ 12-13.)

Here, all of the allegations in Plaintiffs' Complaint and Plaintiffs' Declaration support Defendants' version of events that Plaintiffs merely purchased some amount of gold dust, and that they expected to receive profits based on the efforts of Defendants in bringing that gold dust to the United States and refining it.  These allegations are simply insufficient, even read in the light most favorable to Plaintiffs, to establish a common enterprise under the *Howey* test as it has been interpreted by the Sixth Circuit. In the absence of any horizontal commonality or any common enterprise, Plaintiffs' agreement to purchase gold dust from Defendants cannot be considered an investment contract or a security pursuant to the federal securities laws.  Because this case is not one controlled by the federal securities laws, Plaintiffs cannot rely on those laws in order to establish personal jurisdiction over Defendants.

## CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiffs' Complaint against ISR,

Inc. and Cleal Watts for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

                        Respectfully Submitted,

                        BAKER DONELSON BEARMAN
                        CALDWELL & BERKOWITZ, PC

                        /s/ Bruce A. McMullen
                        Bruce A. McMullen (#18126)
                        Lori Patterson (# 19848)
                        Mary Wu (#31339)
                        165 Madison Ave, Suite 2000
                        Memphis, Tennessee 38103
                        (901) 526-2000
                        bmcmullen@bakerdonelson.com
                        mwu@bakerdonelson.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on this 23rd day of January 2014, a copy of the foregoing electronically filed document was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

            Darrell N. Phillips
            Pietrangelo Cook PLC
            6410 Poplar Avenue, Suite 190
            Memphis, TN 38119
            901-685-2662

                        /s/ Bruce A. McMullen
                        Bruce A. McMullen