# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| MARY PHILLIPA SLEDGE, MARY JANE PIDGEON SLEDGE TRUST, and PIDGEON SLEDGE FAMILY LIMITED PARTNERSHIP, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| INDICO SYSTEM RESOURCES, INC and CLEAL WATTS, III | ) ) ) ) |
| Defendants. | ) ) |

No. 13-2578

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

Before the Court is the Motion to Dismiss for Lack of Jurisdiction under Federal Rule of Civil Procedure 12(b)(2) of Defendants Indico System Resources, Inc. and Cleal Watts, III ("Defendants"), filed December 3, 2013. (ECF No. 11). Plaintiffs filed their Response in Opposition to the Motion (ECF No. 13) on December 30, 2013. Defendants filed a Reply on January 23, 2014 (ECF No. 17), to which the Plaintiffs filed a Sur-Reply on January 30, 2014. (ECF No. 21). On December 2, 2014, the parties appeared for an evidentiary hearing on the Motion. For the reasons stated below, the Defendants' Motion to Dismiss for Lack of Jurisdiction is **DENIED**.

## BACKGROUND

### I. Nature of the Claims

Plaintiffs Mary Phillipa Sledge, Mary Jane Pidgeon Sledge Trust, and Pidgeon Sledge Family Limited Partnership ("Plaintiffs") filed a Complaint against Defendants Indico System

1

Resources, Inc. ("ISR") and Watts in his individual capacity and as an agent of ISR on July 29, 2013. (Pls.' Compl., ECF No. 1). Mr. Watts is the President of ISR, a company in the business of consigning unrefined, new gold ore, dust. (*See* Defs.' Mem. in Supp. 1, ECF No. 11-1). The Plaintiffs allege violations of various state laws and federal securities laws by claiming that Defendants fraudulently solicited approximately $5 million from Plaintiffs to purchase gold dust mined in the Republic of Ghana. (Pls.' Compl. ¶¶ 1, 40–109). The Complaint alleges damages that satisfy the amount-in-controversy requirement under 28 U.S.C. § 1332.

The Plaintiffs' Complaint argues two separate theories in support of this Court's personal jurisdiction over the Defendants for the claims alleged. (*Id.* ¶¶ 8–12). First, the Plaintiffs argue that the Court has personal jurisdiction over both Defendants because Watts, a resident of Texas, directed fraudulent communication and information into Tennessee on behalf of himself and ISR, purposely availing himself and ISR of the forum. Second, the Plaintiffs argue that the Court has jurisdiction over the Defendants under both the Securities Act of 1933 and the Securities and Exchange Act of 1934, both of which contain nationwide-service-of-process provisions establishing personal jurisdiction.

## II. Contacts with Tennessee

In support of this Court's exercise of jurisdiction, the Plaintiffs have submitted numerous emails and testified to a myriad of calls between Watts and Sledge. These communications form the bases of the Plaintiffs' claims. The Defendant does not seriously dispute that Watts made calls or sent emails over his 18-month period of communication with Sledge. Instead, the Defendant argues that he did not know Sledge was in Tennessee when he made such communications, and, therefore, he could not have personally availed himself of the privilege of doing business or causing injury in Tennessee. Specifically, the Defendants point out that Sledge

spent some time in Kentucky during the relevant period, had one cell phone with a Kentucky area code, and sometimes affixed the Kentucky phone number below her signature line in emails. In response, the Plaintiffs present evidence, described in more detail below, that Watts knew he was communicating with Sledge while she was in Tennessee. He knew not just of her interest in investing in gold, but also knew personally of her residence and personal business in Tennessee. Watts made numerous calls to her Tennessee home and cell numbers. Sledge's email address contains no geographical identifier, but her emails with Watts showed references to bank accounts in Tennessee and Tennessee phone numbers.[1] Furthermore, the Plaintiffs presented evidence that Watts talked with Sledge's accountants in Tennessee.

**III. Nationwide Service of Process**

As an initial matter, the Court will not address the Defendants' argument against the Court's exercise of personal jurisdiction with respect to the Plaintiffs' securities-law claims. Generally, a provision which allows for nationwide service of process confers jurisdiction upon a district court because "the strictures of *International Shoe*" do not apply.[2] The question of jurisdiction under these provisions is whether the defendant had minimum contacts with the United States, not the forum state.[3] The Defendants here have minimum contacts with the United States. But the Defendants also cite opinions of the Sixth Circuit holding that whether jurisdiction is properly conferred under nationwide-service-of-process provisions also depends

---

[1] *See* Pls.' Exs. 3–5, 8–9.

[2] *See United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993).

[3] *See id.* (citing *Secs. Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985)).

upon whether a plaintiff has adequately stated a claim under the federal law.[4] More precisely, if a plaintiff has not stated a claim under a federal law which allows for nationwide service of process, he cannot claim that the district court has personal jurisdiction over a defendant as to those claims. But here, the Plaintiffs are not attempting to persuade the Court that it has personal jurisdiction under the nationwide-service-of-process provision and, thus, that such jurisdiction also applies over the Defendants generally, even for state-law fraud claims.[5] If that were the case, then an analysis of the Plaintiffs' failure to state the securities-law claims would be more appropriate in a 12(b)(2) motion like this one. Since the Court here determines that there is an independent basis for personal jurisdiction outside of the '33 and '34 Acts' nationwide-service-of-process provisions, a personal-jurisdiction challenge to the securities-law claims is not an efficient method. Instead, if the Defendants wish to challenge the bases of the Plaintiffs' securities-law claims, they may do so with full briefing in a subsequent motion.[6]

---

[4] *Indah v. SEC*, 661 F.3d 914, 922 (6th Cir. 2011).

[5] *See* Jon Heller, Note, *Pendent Personal Jurisdiction and Nationwide Service of Process*, 64 N.Y.U. L. Rev. 113, 116 (1989) ("A problem arises when nationwide service of process is used for both federal claims and pendent state claims because even if the federal court has subject matter jurisdiction over the state claim, the court still has to consider whether the nationwide service or process used for the federal claim confers personal jurisdiction over the defendant with respect to the state claims. If such pendent process were not effective, the court would lack personal jurisdiction to adjudicate the state law claim.").

[6] Generally, defendants may not raise a second pre-answer 12(b) motion. But here, the Defendants have fairly raised the issue of the Plaintiffs' alleged failure to state a claim on the securities claims. The Court chooses not to address the issue in the 12(b)(2) vehicle, and thus, if the Defendants so choose, they may raise the defense in a subsequent pre-answer motion, in the answer itself, or at later stage by proper motion. *See* Fed. R. Civ. P. 12(b), (g)–(h); 2 James Wm. Moore et al., Moore's Federal Practice § 12.23.

## STANDARD

When a party challenges personal jurisdiction, the plaintiff bears the burden of establishing the existence of jurisdiction.[7] "In the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."[8] When ruling on a 12(b)(2) motion, the Court may "(1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion."[9] The Sixth Circuit has explained that "[t]he weight of [the] burden . . . depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal-jurisdiction issue."[10] If the Court had ruled on written submissions alone, the Plaintiffs would have had the burden of making "a prima facie showing that personal jurisdiction exists."[11] On the other hand, "[w]hen a pretrial-evidentiary hearing is conducted, the preponderance-of-the-evidence standard applies."[12] Therefore, the Plaintiffs must prove by a preponderance of the evidence that the Court has personal jurisdiction over the Defendants.[13]

---

[7] *Carrier Corp. v. Outokummpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012); *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

[8] *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

[9] *Intera Corp. v. Henderson*, 428 F.3d 605, 615 n.7 (6th Cir. 2005) (citing *Serras* 875 F.2d at 1214).

[10] *Serras*, 875 F.2d at 1214; *see Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012).

[11] *Schneider*, 669 F.3d at 697.

[12] *Id.* (explaining that the different burdens prevent a defendant "from 'defeat[ing] personal jurisdiction by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff' while simultaneously allowing a defendant to 'invoke the court's discretion to order a pretrial evidentiary hearing' and thereafter apply the more-exacting standard when a plaintiff's jurisdictional allegations are wholly unfounded." (quoting *Serras*, 875 F.2d at 1214)).

The Defendants briefly stated at the evidentiary hearing—but never included in their written briefs—that in order to prove personal jurisdiction at this stage, the Plaintiffs would also have to prove their actual claims. While a court may combine a personal-jurisdiction evidentiary hearing with the trial on the merits,[14] that is not the case here. After holding an evidentiary hearing on the jurisdictional issue, the Court now analyzes disputed contacts with Tennessee, not the veracity of the Plaintiffs' legal claims.

## DISCUSSION

### I. Personal Jurisdiction

#### A. Specific Jurisdiction

Federal courts apply state law, subject to constitutional limitations, to determine questions of personal jurisdiction.[15] In response to the Defendants' Motion, the Plaintiffs make no general-jurisdiction argument that the defendant has had continuous and systematic contacts with Tennessee. Instead, the Plaintiffs argue that the Court may exercise specific jurisdiction over the Defendants, where, as here, "the claims in the case arise from or are related to the

---

[13] The Plaintiff filed a Motion to Strike the Defendant's Reply (ECF No. 18) because the Reply contained unsworn declarations. In response, and on the same day, the Defendant filed a Notice of Correction to its Reply. (ECF No. 19). In the Notice of Correction, Watts declared under penalty of perjury that his declaration was true. Thus, the Plaintiff's Motion to Strike the Defendant's Reply is **DENIED**.

[14] *See Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 771 (E.D. Mich. 2001) (citing *Serras*, 875 F.2d at 1215).

[15] *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000)).

defendant's contacts with the forum state."[16] Courts in this Circuit rely on the three-prong *Mohasco* test to determine whether specific jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.[17]

Specific jurisdiction, then, depends upon the Defendants' contacts with and availment of the forum state, taking into account the cause of action's relation to Tennessee and the connection between the Defendants and Tennessee.

### B. Tennessee's Long-Arm Statute

Federal courts must rely on the law of the forum state to determine whether personal jurisdiction exists,[18] and the exercise of jurisdiction "over a nonresident defendant is appropriate only if it meets the state's long-arm statute and constitutional due process requirements."[19] Constitutional due-process requirements mandate that the defendant have sufficient minimal contacts such that "'traditional notions of fair play and substantial justice' are not offended."[20] Tennessee's long-arm statute provides for jurisdiction as to any action or claim for relief arising

---

[16] *Id.*

[17] *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

[18] *Calphalon Corp.*, 228 F.3d at 721.

[19] *Intera Corp.*, 428 F.3d at 615 (citing *Calphalon Corp.*, 228 F.3d at 721).

[20] *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

from "any tortious act or omission within this state."[21] Furthermore, courts have interpreted the statute as being "coterminous with the limits on personal jurisdiction imposed" by the Due Process Clause.[22] In other words, Tennessee's jurisdictional limits are the same as constitutional due-process limits. Watts and ISR must have behaved such that they could "reasonably anticipate being haled into court" in Tennessee.[23] "Even a single contact by [a] defendant directed toward Tennessee that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process."[24]

**II. Analysis**

Jurisdiction over two different defendants normally implicates two separate analyses: "In applying these [*Mohasco*] elements, the contacts of each defendant must be assessed individually."[25] The Plaintiffs alleged that during the relevant times, "Watts was an employee, agent, or servant of [ISR] and was acting both in his individual capacity as well as in his capacity as an employee and/or agent of [ISR]."[26] The "fiduciary shield doctrine" provides that "when an individual defendant is an officer of a corporation, a court may not exercise personal jurisdiction

---

[21] Tenn. Code Ann. § 20-2-214(a)(2).

[22] *Intera Corp.*, 428 F.3d at 616 (citing *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993)); *see* Tenn. Code Ann. § 20-2-214(a)(6).

[23] *Neal*, 270 F.3d at 331 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[24] *Id.* (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

[25] *Williams v. Firstplus Home*, 310 F. Supp. 2d 981, 991 (W.D. Tenn. 2004) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

[26] Pls.' Compl. 3, ECF No. 1.

over the defendant based on actions taken in his or her corporate capacity."[27] In their Motion to Dismiss, however, the Defendants only briefly mention the idea of such a doctrine, and then state that "the specific jurisdiction analysis for ISR applies equally to Watts."[28] Perhaps this is because at least one district court in Tennessee found application of the fiduciary shield doctrine to bar an exercise of jurisdiction over an officer "unpersuasive." The court held that "[n]o Tennessee state court has ever applied the doctrine to bar jurisdiction."[29] Furthermore, citing a Sixth Circuit case, the court opined that "the fiduciary shield doctrine . . . is not required by due process."[30] An officer of a corporation who is "actively and personally involved in the conduct giving rise to the claim" is subject to personal jurisdiction in the forum state because he has purposely availed himself of the forum, just as the corporation has.[31] Here, the parties do not dispute that Watts made the communications at issue and was the president of ISR. He was personally involved with the transaction, and the Plaintiffs have not implicated any other agents of ISR, if any exist. Uniquely then, the Court's exercise of personal jurisdiction over both Defendants requires essentially the same analysis.

### A. Purposeful Availment

The first prong of the *Mohasco* test often determines whether the Court has jurisdiction over the defendant. "The purposeful availment requirement serves to protect a defendant from

---

[27] *Simplex Healthcare, Inc. v. Marketlinkx Direct, Inc.*, 761 F. Supp. 2d 726, 730–31 (M.D. Tenn. 2011) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985)).

[28] Defs.' Mem. in Supp. of Mot. to Dismiss for Lack Personal Juris. 13, ECF No. 11-1.

[29] *Simplex Healthcare*, 761 F. Supp. 2d at 731.

[30] *Id.* at 731–732 (citing *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 698 (6th Cir. 2000)).

[31] *See Balance Dynamics*, 204 F.3d at 698.

being hailed into a jurisdiction by virtue of 'random,' 'fortuitous,' or 'attenuated' contacts."[32] An exercise of specific jurisdiction is proper when the claims arise from or are related to a defendant's contact with the forum state, and therefore, the Sixth Circuit has held that "purposeful availment may exist when a defendant makes telephone calls and sends facsimiles into the forum state and such communications 'form the bases for the action.'"[33]

The Defendants argue that ISR and Watts's contacts with Tennessee were random and fortuitous: ISR has no offices in Tennessee and does no business in Tennessee; Watts has never been to Tennessee; Sledge initiated the contact; and Watts never knew that he was contacting Sledge in Tennessee. The Plaintiffs respond that Watts clearly knew that Sledge resided and conducted business in Tennessee while he called and emailed her, and that because Watts purposefully directed fraudulent communications causing injury into Tennessee, this Court has jurisdiction. Although emails and phone calls into a state do not normally confer personal jurisdiction,[34] when numerous communications actually form the bases of the claims alleged, the Court may exercise jurisdiction.[35] The parties' arguments essentially boil down to the distinction of two Sixth Circuit opinions: *Neal v. Janssen* and *Rice v. Karsch*.

### 1. *Neal v. Janssen*

In *Neal*, Tennessee plaintiffs were attempting to sell a horse that was boarded in the Netherlands. The plaintiffs met with the Belgian defendant in Florida, where the defendant also had a home. The defendant, who would receive a standard 10% commission upon sale, agreed to

---

[32] *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).

[33] *Id.* at 616 (citing *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001)).

[34] *See Rice v. Karsch*, 154 F. App'x 454, 462 (6th Cir. 2005).

[35] *Neal*, 270 F.3d at 332.

sell the horse. The plaintiffs believed that the horse would sell for about $500,000, but the defendant later made phone calls and sent facsimiles to the plaintiffs stating that certain third-party buyers had made substantially lower bids. The defendant also told the plaintiffs that they had "placed an unrealistically high value on the horse" but later agreed that he would forgo his commission if the plaintiffs would allow him to sell the horse for $312,000. The plaintiffs agreed, and they received just under $312,000 by wire transfer at their bank in Tennessee shortly thereafter. They subsequently learned that the defendant had actually accepted a $480,000 offer for the horse and kept the excess money.[36]

The Sixth Circuit upheld the district court in Tennessee's exercise of jurisdiction over the defendant even though he had never stepped foot in Tennessee. The Court explained that the defendant

> did not make just one phone call to plaintiffs in Tennessee in an effort to solicit business from them. The undisputed facts demonstrate that [the defendant] engaged in a course of conduct over a period of time that involved a single business transaction—the sale of an expensive horse—with plaintiffs, conducted by phone and fax. The actions that constitute the entire transaction were the allegedly fraudulent communications and these same communications form the bases for plaintiffs' tort claims. The alleged misrepresentations are the elements of the cause of action itself . . . . As the court below aptly put it, the communications form the "heart of plaintiffs' claims." The conduct here was much more than a single phone call made in an effort to start a business relationship.[37]

Physical presence in the state is not a prerequisite for jurisdiction. Rather, "when a foreign defendant purposefully directs communications into the forum that cause injury within the

---

[36] *See Neal*, 270 F.3d at 330.

[37] *Id.* 332–33.

11

forum, and those communications form the 'heart' of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state."[38]

### 2. *Rice v. Karsch*

The Defendants argue that *Neal* is distinguishable and *Rice* was decided later. In *Rice*, Merchantonline.com, a Florida company, contracted with Pagan Lewis Motors, Inc., a Tennessee race-car team, and promised to sponsor Pagan Lewis and pay a sum of money over the five months. In return, Pagan Lewis promised advertising rights to Merchantonline.com. To guarantee performance, Merchantonline.com granted Pagan Lewis a security interest in shares of Merchantonline.com stock. Those shares were placed in escrow. Less than a month later, Merchantonline.com notified Pagan Lewis that it would default. The parties subsequently came up with a workout agreement, which rescheduled the payments. Merchantonline.com then breached this agreement. In arguing for jurisdiction, the plaintiff asserted that the defendant's "alleged wrongdoing consist[ed], in part, of making fraudulent and negligent telephone calls to [plaintiff] in Jackson, Tennessee, of sending e-mails and letters to Rice in Jackson, Tennessee containing similar statements, and of making a call and sending an email to the [plaintiffs'] broker . . . in Jackson."[39]

The Sixth Circuit focused on the communications in *Rice* to distinguish it from *Neal*. The Court held that the plaintiffs had not alleged that the defendant "solicited, negotiated, or performed any aspect of the contract in Tennessee."[40] There were also multiple agents acting on behalf of the parties, and the Court noted that emails were sent to generic Yahoo accounts, with

---

[38] *Id.* at 333.

[39] *Rice*, 154 F. App'x at 456–57, 460.

[40] *Id.* at 461.

no indication as to the location of the account holder. From this, the Court held that "[f]inding personal jurisdiction over an individual merely because he sends an email to a generic email address is incomprehensible to this court."[41] The defendants' "phone, mail, and e-mail contacts with [the plaintiff and his broker] in Tennessee occurred solely because Pagan Lewis Motors . . . chose to have offices in Tennessee, not because [the defendant] sought to further his personal business . . . there."[42] In essence, simply directing responses to communication into a state, in an action primarily based on breach of contract, could not create personal jurisdiction in that state.

### 3. *Neal* as Controlling

The Court holds that the facts and legal conclusions in *Neal* are more akin to this case. First, as in *Neal*, the alledged fraudulent communications form the "heart" of this action. In *Rice*, the heart of the action was a breach of contract. The *Rice* plaintiffs only alleged that a small part of the defendants' "wrongdoing" consisted of directing fraudulent and negligent communications. Almost all of those communications were responses from the defendants. Here, on the other hand, the "content of the communications into the forum gives rise to an intentional tort action," which "alone may constitute purposeful availment."[43] Even if Sledge made first contact with Watts, the Plaintiff presented uncontroverted testimony at the evidentiary hearing that Watts repeatedly telephoned and emailed Sledge over a period of 18 months.[44] The

---

[41] *Id.* The Court also refused to consider emails sent after the filing of a complaint. *Id.*

[42] *Id.* at 462.

[43] *Id.* at 461 (quoting *Neal*, 270 F.3d at 332).

[44] *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 696 (6th Cir. 1996) ("[W]e explained in *Southern Machine* [*v. Mohasco*] that the dispositive fact is not whether the plaintiff or the defendant initiated the contact between the parties, but whether the defendant ultimately 'chose to deal' with the plaintiff.").

alleged misrepresentations in those phone calls and emails involved ISR and Watts's experience in the gold industry, the value of the gold, and various events that held up shipments while the Plaintiffs wired money to the Defendants. In a continuing and ongoing series of conversations and emails, Watts allegedly misrepresented past and present facts which led to the Plaintiffs' investment of over $5 million without ever realizing any shipment of gold.[45] In doing so, Watts furthered his personal business while creating continuous consequences in Tennessee. The alleged misrepresentations, as in *Neal*, "are the elements of the cause of action itself,"[46] and the quality of these contacts are sufficient for a finding of purposeful availment of Tennessee.[47]

Second, the Defendants attempt to prove the applicability of *Rice* by showing that here, "there was no indication that [Watts] knew or should have known [he] was communicating into Tennessee."[48] Thus, the Defendants argue, they could not have purposefully availed themselves of Tennessee if Watts never even knew he was communicating into Tennessee. But the evidence shows that Mr. Watts knew, or at least should have known, that he was directing constant communication into Tennessee. Watts communicated with Sledge at a variety of telephone numbers, including some with Kentucky area codes and some with Tennessee area codes.

---

[45] At the evidentiary hearing, the Plaintiffs submitted emails in which Watts attached spreadsheets of allegedly misrepresented information about the existence, amounts, shipment dates, and events directly related to the alleged purchase and shipment of the gold. *See* Pls.' Ex. 1–2. Furthermore, Sledge testified as to the numerous conversations she had with Watts.

[46] *Neal*, 270 F.3d at 332.

[47] The Court also heard evidence of wire transfers and soft corporate offers, which both parties used to support their positions on the instant Motion. The Court's holding here, however, relies on settled case law that confers jurisdiction upon the forum when allegedly fraudulent misrepresentations directed into the forum state form the heart of the action itself. The evidence strongly supports a finding of jurisdiction on this basis, and therefore, the Court does not discuss these other contacts.

[48] Defs.' Reply 7, ECF No. 17.

People can use cell phones anywhere, and, standing alone, the existence of an area code on a number the defendant calls should not automatically impute knowledge of the defendant's location. Testimony established, however, that Watts and Sledge did not simply communicate about the gold when talking on the phone. Although their relationship had business as its foundation, Sledge testified that from 2011 to 2013, she and Watts would sometimes talk more than twice a day while she was in Memphis. On several occasions, they talked for hours about their backgrounds, home cities, and families. Watts once sent flowers to Sledge's mother at a Memphis address. Sledge had conversations with Watts about her love for her home city of Memphis, and even sent Watts an email about an attraction in the city.[49] Watts also communicated with two of Sledge's certified public accountants about his business with Sledge. One of the CPAs, Cameron Spivey, was skeptical about Sledge's investment, and Watts called Spivey in Memphis to assuage his concerns and "pitch" the investment. In light of Watts's numerous, detailed conversations with Sledge and her representatives, the Court holds that, by a preponderance of the evidence, Watts knew that he was directing communication into Tennessee.

The Defendants' contention that their contacts with Tennessee occurred solely because the Plaintiffs were located in Tennessee is also unpersuasive. They argue that ISR and Watts's contacts with Tennessee were "random," "fortuitous," and "attenuated."[50] Accordingly, it would violate traditional notions of fair play and substantial justice if the Court haled them into Tennessee. But the evidence shows that Watts's communications with Sledge in Tennessee were

---

[49] *See* Pls.' Ex. 9. Sledge also testified that she talked to Watts about some of Memphis's other attractions: the Peabody Hotel, the Rendezvous restaurant, and the Germantown Charity Horse Show. Such conversations, alone, do not mean that Watts purposefully availed himself of Tennessee. Instead, they show that Watts knew that when he emailed and phoned Sledge with allegedly fraudulent information, he was directing that information to her in Tennessee.

[50] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

not random or fortuitous. This is not a case of a single, isolated call or one where a Defendant was unaware that he was dealing in the forum state. The facts recited above show that Watts made numerous, knowing communications into Tennessee to further his own gains and thus availed himself of the forum.

### B. Cause of Action Arises in the Forum

The Plaintiff's claim sounds primarily in fraud. In the first paragraph and throughout the rest of their Complaint, the Plaintiffs allege multiple misrepresentations, directed into the state of Tennessee, which created a "fraudulent investment scheme."[51] The Defendants claim that the causes of action arise, if at all, from ISR's actions or inactions in performing an agreement in Africa. Furthermore, the Defendants argue that the claims arose in Texas, where the Plaintiffs wired money to the Defendants. But performance of any alleged contract is secondary to the Plaintiffs' wholesale claims of fraud. When a defendant purposefully directs fraudulent communications into the forum and such communications are the bases for intentional-tort claims, the communications are the "heart" of the lawsuit.[52] The cause of action arises from the defendant's forum-state activities.

### C. Contacts and Reasonableness

*Mohasco*'s third prong requires the Court "to determine whether the contacts are substantial enough to make it reasonable to subject the defendant to the personal jurisdiction of the Tennessee courts."[53] As in *Neal*, the Defendants here established a relationship with the Plaintiffs "from which [they] hoped to profit financially." The Plaintiffs allege that the

---

[51] Pls.' Compl. 1, ECF No. 1.

[52] *See Neal*, 270 F.3d at 332–33.

[53] *Id.* at 333.

16

Defendants knowingly directed false statements of material facts into Tennessee, and Watts ultimately converted the money that he was supposed to be investing in the gold venture. The Defendants' contacts with Tennessee are substantial enough to make it reasonable to subject them to the jurisdiction of this Court. In determining reasonableness, the Court should consider "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the [controversy]."[54] While both ISR and Watts reside in Texas, there are no unusual circumstances that would rebut an inference of reasonableness.[55] Tennessee has an interest in ensuring that its citizens may litigate claims in the state against non-residents when a non-resident has allegedly committed a tortious act in the state and where the plaintiff realizes the consequences in the state. The Plaintiffs have a clear interest in obtaining relief. Finally, although Texas has an interest in the litigation, Tennessee also has an interest, as Watts directed the communications into Tennessee and allegedly caused harm in Tennessee. Therefore, this Court's exercise of personal jurisdiction is reasonable.

---

[54] *Schneider v. Hardesty*, 669 F.3d 693, 703–04 (6th Cir. 2012) (citing *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 554–55 (6th Cir. 2007)).

[55] *See id.*

## CONCLUSION

Watts knowingly directed communications into Tennessee. Those phone calls and emails contained allegedly fraudulently information and form the heart of the cause of action in this case. Therefore, the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**.

**IT IS SO ORDERED.**

                                                                **s/ S. Thomas Anderson**
                                                                 S. THOMAS ANDERSON
                                                                 UNITED STATES DISTRICT COURT

                                                                 Date: December 18, 2014.