IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MARY PHILLIPA SLEDGE, MARY JANE PIDGEON SLEDGE TRUST, and PIDGEON SLEDGE FAMILY LIMITED PARTNERSHIP,<br>　　　　Plaintiffs,<br><br>v.<br><br>INDICO SYSTEM RESOURCES, INC. and CLEAL WATTS, III<br><br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 2:13-cv-2578<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants Indico System Resources, Inc. and Cleal Watts, III, ("Defendants"), by and through counsel for this limited purpose, pursuant to Federal Rule of Civil Procedure 12(c), respectfully submit to this Court this Memorandum in Support of their Partial Motion for Judgment on the Pleadings for a dismissal of Plaintiffs' claims for violation of § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, violation of § 20(a) of the Securities and Exchange Act of 1934, and claims under § 12(1) of the Securities and Exchange Act of 1933. In support of their Motion, Defendants state:

**BACKGROUND**

Plaintiffs Mary Phillipa Sledge, Mary Jane Pidgeon Sledge Trust, and Pidgeon Sledge Family Limited Partnership ("Plaintiffs") filed a civil action in this Court against Defendants Indico System Resources, Inc. ("ISR") and Watts, in his individual capacity on July 29, 2013.

(D.E. 1). Both Defendants were served with Plaintiffs' Complaint on October 29, 2013. (D.E. 7-8.)

In their Complaint, Plaintiffs allege that Defendants engaged in "a fraudulent scheme" upon them which involved the "solicitation of approximately $5 million to purchase alleged gold dust mined in Ghana." (Compl. ¶ 13.) Plaintiffs attached a "Soft Corporate Offer" as an Exhibit to their Complaint which reflects the transaction of Plaintiffs' purchase of the gold dust. (D.E. 1-1.) Plaintiffs alleged that "Watts proposed an investment opportunity whereby Plaintiffs would purchase unrefined gold dust." (Compl. ¶ 15(a).) The purchase of the gold dust in the unrefined form would be shipped from Ghana. (Compl. ¶ 15(b).) According to Plaintiffs, Watts represented that the refining process would increase the value of their unrefined gold dust purchase up to thirty percent (30%). (*Id.*) Plaintiffs allege that Watts made this representation by stating that this rate of return was based on actual historical results of similar investments that he had handled for other investors. (*Id.*)

Based on these allegations, Plaintiffs assert claims for violation of § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, violation of § 20(a) of the Securities and Exchange Act of 1934, and claims under § 12(1) of the Securities and Exchange Act of 1933, among others. (*See* Compl. ¶¶ 40-109.) Defendants now move this Court for a dismissal of these federal securities claims because the transaction at issue is not a security as that term is interpreted under either the Securities and Exchange Act of 1934 and the Securities and Exchange Act of 1933.

## LEGAL STANDARD

"Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same de novo standard as motions to dismiss pursuant to Rule 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). Only

well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted if the moving party is nevertheless entitled to judgment. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). The court does not need to accept as true legal conclusions or unwarranted factual inferences. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (internal quotation marks omitted) (alternation in original). The pleading standard requires "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

In reviewing a motion to dismiss, the court does accept as true all the factual allegations in the complaint, but may nonetheless dismiss claims where the complaint does not allege sufficient facts to state a claim to relief that is plausible on its face. *Id.*

## LAW AND ARGUMENT

Plaintiffs have not adequately stated a claim for violation of the Securities Act of 1933 and the Securities and Exchange Act of 1934 because trade of gold ore, dust, is not a security within the meaning of either statute.

A security is:

Any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security (including a certificate of deposit) or on any group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C. § 80a-3 (2013).[1]

The transaction at issue in this case does not fall within any category of this definition. This type of transaction is best characterized as trade of a commodity which is not regulated by the Securities Exchange Commission. Commodities are not considered securities. *See Curran v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 622 F.2d 216, 220 (6th Cir. 1980). Or, alternatively, this transaction is more akin to a pre-payment purchase agreement which gives Plaintiffs the right to purchase raw gold ore, dust, which is also not a transaction covered by the federal securities laws. *S.E.C. v. Belmont Reid & Co., Inc.*, 794 F.2d 1388, 1391 (9th Cir. 1986).

The most generous and only conceivable category under this definition for Plaintiffs to assert the applicability of federal securities law would be "investment contract," but under the *Howey* test, Plaintiffs cannot assert that the type of transaction at issue is contemplated by these laws. Under the *Howey* test, a court determines "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *SEC v.*

---

[1] The definitions of a "security" under either Act are virtually the same. *S.E.C. v. Belmont Reid & Co., Inc.*, 794 F.2d 1388, 1390 (9th Cir. 1986).

*W.J. Howey Co.*, 328 U.S. 293 (1946). To satisfy *Howey*'s definition of an investment contract, three elements must be met: (1) an investment of money; (2) a common enterprise; and (3) an expectation of profits that will be derived solely from the efforts of others. *See Deckebach v. La Vida Charters, Inc. of Florida*, 867 F.2d 278, 271 (6th Cir. 1989). Plaintiffs have failed to adequately state a claim under these federal securities statutes because there is no common enterprise and/or an expectation of profits that will be derived <u>solely</u> from the efforts of others.

      A.        **There is no common enterprise.**

For the purposes of this argument only, Defendants will concede the first prong of *Howey* has been met, because taking the allegations of the Complaint as true, there has been a payment of money by the Plaintiffs. However, Plaintiffs have alleged no facts upon which this Court could find a common enterprise. The United States Court of Appeals for the Sixth Circuit has construed the common enterprise element of the *Howey* test to require a demonstration of horizontal commonality. *Dechebach*, 867 F.2d at 281. The Sixth Circuit has specifically rejected the argument that *Howey*'s common enterprise element can be met by a demonstration of vertical commonality. Importantly, horizontal commonality requires that there be multiple investors who pool their funds, resulting in each having an undivided interest, such that all investors share in the profits and risks of the enterprise together. *S.E.C. v. SG Ltd.*, 265 F.3d 42, 50 (1st Cir. 2001).

Here, Plaintiffs have not alleged facts that could meet the horizontal commonality requirement. At best, Plaintiffs allege that they purchased gold dust and that they planned to rely on the efforts of Defendants to refine the gold dust and sell it to realize their profits. While these allegations might allege vertical commonality, Plaintiffs have utterly failed to provide any facts upon which this court could make a prima facie finding of horizontal commonality. Plaintiffs

have not alleged the existence of other unique investors who have had their funds were pooled with Plaintiffs' funds. Finally, even if they had alleged some sort of pooling, horizontal commonality requires more than pooling alone. "It also requires that investors share in the profits and risks of the enterprise" --an allegation utterly lacking in this case. *See S.G. Ltd.*, 265 F.3d at 50.

      **B.**      **Profits are not expected to derive solely from the efforts of others.**

Plaintiffs' agreement to purchase gold dust did not involve the sale or purchase of a "security" as that term has been defined by the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit. *See Securities and Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946); *Deckebach v. La Vida Charters, Inc. of Florida*, 867 F.2d 278, 271 (6th Cir. 1989). In *S.E.C. v. Belmont Reid & Co., Inc.*, the Ninth Circuit explicitly held that prepayment plans to purchase gold coins were not securities within the meaning of the federal security laws because the profits to the coin buyer "depended upon the fluctuations of the gold market" and the anticipated increase in the world price of gold, and not the managerial efforts of the defendant. 794 F.2d 1388, 1391 (9th Cir. 1986).

Likewise, numerous courts have found where expected profits come from market fluctuations, those transactions were not securities within the meaning of the federal securities laws. *See Noa v. Key Futures, Inc.*, 638 F.2d 77, 79 (9th Cir. 1980) (purchase of silver bars not a security because profits depended upon the fluctuations of the silver market); *Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F.Supp. 359, 367 (S.D.N.Y. 1966) (finding "[t]he mere presence of a speculative motive on the part of the purchaser or seller does not evidence the existence of an 'investment contract' within the meaning of the securities acts").

These transactions do not meet the *Howey* test because expected profits come from market fluctuations and not <u>solely</u> from the efforts of others.

Here, all of the allegations in Plaintiffs' Complaint support this Motion to Dismiss; Plaintiffs merely purchased some amount of gold dust, and that they expected to receive profits based on the increased value in gold once the gold dust was brought to the United States and refined by Plaintiffs' choice. These allegations are simply insufficient, even read in the light most favorable to Plaintiffs, to establish that the transactions at issue were securities under the *Howey* test as it has been interpreted by the Sixth Circuit. In the absence of all three factors of the *Howey* test, Plaintiffs' agreement to purchase gold dust from Defendants cannot be considered an investment contract or a security pursuant to the federal securities laws.

## CONCLUSION

For the foregoing reasons, Defendants request that this Court dismiss Plaintiffs' claims for violation of § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, violation of § 20(a) of the Securities and Exchange Act of 1934, and claims under § 12(1) of the Securities and Exchange Act of 1933.

    Respectfully Submitted,

    BAKER DONELSON BEARMAN
    CALDWELL & BERKOWITZ, PC

    /s/ Bruce A. McMullen
    Bruce A. McMullen (#18126)
    Lori Patterson (# 19848)
    Mary Wu (#31339)
    165 Madison Ave, Suite 2000
    Memphis, Tennessee 38103
    (901) 526-2000
    bmcmullen@bakerdonelson.com
    mwu@bakerdonelson.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of April 2015, a copy of the foregoing electronically filed document was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Darrell N. Phillips  
Pietrangelo Cook PLC  
6410 Poplar Avenue, Suite 190  
Memphis, TN 38119

Dr. Cleal Watts  
8926 Forest Hills Blvd.  
Dallas, TX 75218

/s/ Bruce A. McMullen  
Bruce A. McMullen