UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

---

MARY PHILLIPA SLEDGE, MARY JANE
PIDGEON SLEDGE TRUST, and PIDGEON SLEDGE FAMILY
LIMITED PARTNERSHIP

**Plaintiffs,**

v.

INDICO SYSTEM RESOURCES, INC. and
CLEAL WATTS, III

**Defendants.**

Civ. 2:13-cv-2578

---

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS

---

Plaintiffs submit this Response in Opposition to the Partial Motion for Judgment on the Pleadings (the "Motion", ECF No. 58) filed by Cleal Watts, III ("Watts") and Indico System Resources, Inc. ("Indico")(collectively, the "Defendants" hereto) and state as follows:

Defendants articulate a single premise in their Motion, that Plaintiffs' claims for violations of the securities acts (the "Acts") of 1933 and 1934 should be dismissed because the investment in gold dust at the heart of this dispute is not a security. In support of this premise, Defendants argue that Plaintiffs' Complaint does not state claims sufficient to satisfy the last two elements of the three-part Howey test.[1] SEC v. W.J. Howey Co., 328 U.S. 293 (1946). Plaintiffs would show, by contrast, that the Complaint, (ECF No. 1), plainly alleges facts sufficient to support the requisite elements. Moreover, to the extent the Court is willing to look beyond the

---

[1] The first element is an investment of money. Deckebach b. La Vida Charters, Inc. of Florida, 867 F.2d 278, 271 (6th Cir. 1989). The second element is a common enterprise and the third is an expectation of profits that will be derived solely from the efforts of others. Id. Defendants have conceded that the first of the three requirements, the "investment of money," is properly pleaded by Plaintiffs. (ECF No. 58-1, p. 5).

pleadings, Plaintiffs would show there is evidence (including admissions by Defendants) demonstrating that the subject gold dust investment contract is a security and that Defendants' conduct does therefore subject them to the requirements of the 1933 and 1934 Acts.

## **LEGAL STANDARD**

The standard of review applicable to motions for judgment on the pleadings pursuant to FED.R.CIV.P. 12(c) is the same as the standard for motions to dismiss pursuant to FED.R.CIV.P. 12(b)(6). Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir.1998). In reviewing a Rule 12(b)(6) motion to dismiss, which is based on the failure to state a claim upon which relief can be granted, "[f]actual allegations must be enough to raise a right of relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Michigan Division-Monument Builders of North America v. Michigan Cemetery Ass'n, 2008 WL 1901246, *3 (6th Cir.2008) (internal citations omitted). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" FED.R.CIV.P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(internal citation omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

2

In the event the parties to a Rule 12(c) motion rely on evidence outside the pleadings, and the Court <u>elects</u> to consider that evidence, the motion is treated as a motion for summary judgment under FED. R. CIV. P. Rule 56.  <u>Moody v. United States</u>, 774 F.2d 150, 155 n. 5 (6th Cir.1985).  Summary judgment is appropriate when the movant has shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (citing FED. R. CIV. P. 56(c)).  "[T]he evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Id.* (quoting <u>Smith v. Hudson</u>*,* 600 F.2d 60, 63 (6th Cir.)).

As shown herein, Defendants' Motion can be properly considered and denied as a Rule 12(c) motion based upon the pleadings alone.  Further, to the extent that this Court is considers material beyond the pleadings, Plaintiffs have further shown herein that there is evidence including the Defendants' own admissions that the subject gold dust contracts are securities as contemplated by the <u>Howey</u> Court.  Accordingly, even if this Court should choose to treat the Motion as one for summary judgment, Plaintiffs would show that Defendants' Motion should be denied.

## THE "HOWEY" TEST AND DEFENDANTS' RELIANCE THEREUPON

The Sixth Circuit has recognized that an investment contract is a "security" for purposes of both the Securities Act and the Securities Exchange Act if the contract meets three criteria. <u>S.E.C. v. Prof'l Associates</u>, 731 F.2d 349, 352-53 (6th Cir. 1984).  Such a contract must involve (1) an investment of money (2) in a common enterprise (3) with a reasonable expectation of profits to be derived solely from the efforts of others.  *Id.*  (citing <u>SEC v. W.J. Howey Co.</u>*,* 328 U.S. 293 (1946); <u>Union Planters National Bank of Memphis v. Commercial Credit Business Loans, Inc.</u>*,* 651 F.2d 1174, 1181 (6th Cir.)).

Defendants concede in their Motion that the contract to purchase gold dust satisfies the first element.  (ECF No. 58-1, p. 5).[2]  The only remaining issues before the Court, and the only issues addressed by Defendants in their Motion, are whether Plaintiffs have adequately pleaded facts sufficient to meet the latter two elements.  Defendants argue first, that Plaintiffs have failed to plead a "common enterprise" and, second, that Defendants have failed to plead "a reasonable expectation of profits to be derived solely from the effort of others."  *Id.*  In response, Plaintiffs would show not only that their pleadings are sufficient as to each of these two elements, but that there is clear evidence that the subject investment is a "security" under the securities acts.

## LEGAL ARGUMENT

I.  <u>Plaintiffs have properly pleaded a "common enterprise" under the Sixth Circuit test</u>.

To determine whether there is a "common enterprise" for the purposes of the <u>Howey</u> test, the Sixth Circuit follows the "horizontal commonality" approach.  See <u>Newmyer v. Philatelic Leasing, Ltd.</u>, 888 F.2d 385, 394 (6th Cir. 1989).  Horizontal commonality exists if the "funds of two or more investors ... go into a 'common pool from which all may benefit.'" <u>Stone v. Kirk</u>, 8 F.3d 1079, 1085 (6th Cir.1993)(quoting <u>Newmeyer</u>, 888 F.2d at 394).  The Sixth Circuit has also said horizontal commonality "tie[s] the fortunes of each investor in a pool of investors to the success of the overall venture." <u>Union Planters Nat. Bank of Memphis v. Commercial Credit Bus. Loans, Inc.</u>, 651 F.2d 1174, 1183 (6th Cir. 1981).  This accurately describes the investment scheme perpetrated by Defendants and described in Plaintiffs' Complaint.

---

[2] To the extent there is any dispute whatsoever that Plaintiffs have properly pleaded an investment of money, Plaintiffs would direct the Court to paragraphs 1, 13-15, 21, 22, 23, 26, 27, 28, 35, 64, 71-74, 77, 79, and 82 of the Complaint.  (ECF No. 1).

4

As a threshold matter, this litigation was commenced by three separate Plaintiffs, each distinct and unique investors, drawing from independent resources.[3] (Complaint, ECF No. 1, ¶¶1-4, 21). Defendants solicited these three investor Plaintiffs to contribute to a common investment in unrefined gold dust and promised that "Plaintiffs would realize considerable profits upon the completion of the refining process in a relatively short period of time." (Complaint, ECF No. 1, ¶15(b)). On three separate dates in 2011, each of the Plaintiffs wired funds to Defendants for the purpose of purchasing gold dust from Ghana. (Complaint, ECF No. 1, ¶¶21, 23). In 2012, after difficulties arose with the shipment, Plaintiffs – at Defendant Watts' urging – each made additional investments via wire transfer to Defendants for the purpose of purchasing gold dust from Ghana or for facilitating that purchase. (Complaint, ECF No. 1, ¶26). All of these wire transfers related to a single purchase of a specified amount of gold for the benefit of Plaintiffs which Defendants claimed was delayed by various obstacles. (Complaint, ECF No. 1, ¶15(e)). Plaintiffs wired these funds to bank accounts identified and controlled by Defendants. (Complaint, ECF No. 1, ¶23, 28, 35, 49). The purpose of these wire transfers was to purchase gold. (Complaint, ECF No. 1, ¶49). Defendant Watts assumed control and responsibility of Plaintiffs' purported gold investment portfolio. (Complaint, ECF No. 1, ¶89(c)). Defendants promised Plaintiffs they would enjoy significant returns on their investments. (Complaint, ECF No. 1, ¶¶22, 27). In sum, and as pleaded in the Complaint, the funds of *three* investors went into a common pool, namely Watts' accounts, from which all would ostensibly benefit.

---

[3] For these purposes, the three Plaintiffs are considered separate and distinct investors even if there is some common ownership or affiliation between them. See Investors Credit Corp. v. Extended Warranties, Inc. 1989 WL 67739, 27 (M.D.Tenn.) (M.D.Tenn.,1989)("Therefore, in this case, the fortunes of Batie as an individual and EWI as a separate corporate entity were intertwined in a common enterprise by the financial and contractual arrangements of the offering. To be sure, Batie is the EWI's principal stockholder and officer, but his personal assets and their value were critical to this transaction. Thus, in the Magistrate's view, this latter fact establishes the necessary duality for the "horizontal commonality" requirement of Pulte.")

5

In addition to exceeding their 12(c) burden with the allegations on the face of the Complaint, Plaintiffs would direct the Court to compelling evidence outside the pleadings, which supports Plaintiffs' position that there was a common enterprise. As mentioned, Plaintiffs' unique identities alone satisfy the two investor-plus requirement of the common enterprise test. The Plaintiffs though, were *just three* among *multiple* investors in Defendants' fraudulent gold refinement scheme. (*See* Second Sledge Decl., ECF No. 23-1, ¶16). Defendant Watts represented to Plaintiffs on multiple occasions that there were several other investors in the particular gold dust purchase from Ghana in which Plaintiffs had invested. *Id.* Defendant Watts, in fact, said that he himself was an investor. *Id.* At one point, Watts gave Plaintiffs the name of one of the other investors, but said that he could not divulge the names of the other investors. *Id.* He would also routinely represent to Plaintiffs that the status of the group's investment would be in jeopardy, if Plaintiffs did not supplement their investment with smaller increments to finance alleged legal counsel in Ghana and other charges. *Id*. Further, an April 9, 2012 email from Watts refers to "other investors" in the same shipments of gold dust intended for Plaintiffs. (*See* Watts Email, Ex. 10 to Sledge Decl., ECF No. 14). Finally, Plaintiffs have pointed to at least nine (9) specific conversations and voice mail messages during which Watts referred to additional investors in the gold scheme. (*See* Second Sledge Decl., ECF No. 23-1, ¶17).

As the Complaint and this evidence clearly reflect, Defendant Watts advised her repeatedly that the three Plaintiffs were three of *many* investors whose fortunes were tied to his ability to import a particular shipment of gold dust from Ghana and to refine it in the United States. *Id*. The alleged obstacles he created put Plaintiffs' investment and the investments of the other ostensible investors in jeopardy. To borrow from the Sixth Circuit in Hart v. Pulte Homes of Michigan Corp., 735 F.2d 1001, 1004-05 (6th Cir. 1984), "the investors were all linked

6

together in the common venture to" import a particular shipment of gold dust from Ghana to be refined by Defendants and resold in the United States. *Id.* at 1004-05. Without the particular shipment of gold dust from Ghana, no one's investment had any value. *Id.*

Because the pleadings, combined with the sworn statements of Plaintiff Mary Phillipa Sledge, clearly show that the Defendants' fraudulent gold scheme "tied the fortunes of each investor in a pool of investors to the success of the overall venture," the common enterprise requirement is satisfied and Defendants' Motion should be denied.

II. <u>Plaintiffs have properly pleaded "a reasonable expectation of profits to be derived solely from the efforts of others."</u>

Plaintiffs' Complaint similarly pleads that, together, the three investors relied solely on the efforts of Defendants to produce profits. (Complaint, ECF No. 1, ¶¶1, 46, 55, 81). Defendants made representations to Plaintiffs that Defendants had <u>relationships with entities</u> that owned gold mines, that the gold to be purchased was of a certain quality, that they had experience importing and refining raw gold dust, and that the profits Plaintiffs would realize would be up to thirty percent (30%) of their investments. (Complaint, ECF No. 1, ¶¶15(a)-(c), 22, 27, 41(a)-(c), 53, 84(a)-(e)). Because the Complaint sufficiently alleges that Plaintiffs had a reasonable expectation of profits to be derived solely from the efforts of Defendants, Defendants' Motion should be denied.

Defendants rely on <u>SEC v. Belmont Reid & Co.</u>, 794 F.2d 1388 (9th Cir.1986), which held that contracts for the purchase of gold coins were not securities because they failed to meet this third <u>Howey</u> requirement. The contracts there were made during a period when the value of gold was appreciating rapidly and investors "had as their primary purpose to profit from the anticipated increase in the world price of gold" rather than from the efforts of others. *Id.* at 1391.

7

Defendants contend that the Plaintiffs in this case were not relying on the efforts of others, but rather were expecting profits "strictly from market fluctuations." (Motion, ECF No. 58-1, p. 6).

Defendants' reliance on Belmont is misplaced. A more analogous case is S.E.C. v. R.G. Reynolds Enterprises, Inc., 952 F.2d 1125 (9th Cir. 1991). The investment in that case (the Moreland Gold Program) offered investors the opportunity purchase unrefined gold ore *and* a refining contract. *Id.* at 1133. Importantly, the Court read the gold ore sales contract and the refining contract together in determining that the Moreland Gold Program was a "security". *Id.* at 1133-1134. The Court noted that Howey's requirement, an expectation of profits produced by the efforts of others, is met when "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Id*. (citations omitted). The Court found that the requirement was met because the defendant undertook "essential managerial efforts", which included the construction and operation of the refining plant to refine the investor's gold ore. *Id*.

The R.G. Reynolds Court distinguished Belmont, in which the investors had "had as their primary purpose to profit from the anticipated increase in the world price of gold." *Id.* at 1134 (citing Belmont, 794 F.2d at 1391) In contrast to Belmont, investors in the Moreland Gold Program were not depending on increases in the market price of gold for their profits, but instead expected profits to come primarily from the discount below the current price of gold at which the gold ore was being offered, and upon the defendant's efforts in refining the gold ore to realize profits from that discount. *Id.* at 1135.

Similarly, in the present case, Plaintiffs were not relying primarily on increases in the market price for gold for their profits. Rather, as in R.G. Reynolds, Plaintiffs expected the profits to come from the discount in the price of the unrefined gold (Watts represented that there

8

was a 30% built in net profit) and upon Defendants' efforts in refining the gold to realize the profits from the discounts. (Sledge Decl., ECF No. 14, ¶¶ 9-10). Plaintiffs were also relying on Defendants' purported unique expertise, established personal relationships and efforts in order to procure the unrefined gold from Ghana in the first place. *Id*. Because Plaintiffs were relying primarily on Defendants' "essential managerial efforts" their investment was a "security" under Howey. *See* R.G. Reynolds Enterprises, Inc., 952 F.2d at 1135. Therefore, Plaintiffs have adequately articulated the third element of Howie and have, accordingly, shown that the subject gold dust investments are "securities" for the purposes of the securities acts.

## CONCLUSION

As shown herein, taking all facts to be true and construing the Complaint in the light most favorable to Plaintiffs, Defendants' Motion should be denied. If, alternatively, this Court wishes to consider matters outside the pleadings, including the materials referred to herein and, as a result, elects to treat Defendants' Motion as one for summary judgment, Plaintiffs would show that there is clear and considerable evidence proving that the subject investment is a "security" under the securities acts.[4] In either case, Defendants' Motion should be denied.

Respectfully Submitted,

/s/ Darrell N. Phillips
PIETRANGELO COOK PLC
Anthony C. Pietrangelo BPR # 15596
John J. Cook BPR # 17725
Darrell N. Phillips BPR #30299

---

[4] In the event this Court does elect to convert the Rule 12(c) motion to a Rule 56 motion, Plaintiffs would further request notice of same and further opportunity to be heard on the summary judgment question. Additionally, Plaintiffs would request the opportunity to conduct further discovery before the Court rules on the question pursuant to FED. R. CIV. P. Rule 56(f).

>6410 Poplar Avenue, Suite 190
>Memphis, TN 38119
>901.685.2662
>901.685.6122 (fax)
>*jcook@pcplc.com*
>**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 14th day of May 2015, a copy of the foregoing electronically filed document was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party.

>Bruce A. McMullen
>165 Madison Ave., Suite 2000
>Memphis, Tennessee 38103

>/s/ Darrell N. Phillips