IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MARY PHILLIPA SLEDGE, MARY
JANE PIDGEON SLEDGE TRUST, and
PIDGEON SLEDGE FAMILY LIMITED
PARTNERSHIP,

    Plaintiffs,

v.    Case No. 2:13-cv-2578-STA-cgc

INDICO SYSTEM RESOURCES, INC. and
CLEAL WATTS, III,

    Defendants.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MICHAEL BYRD'S AND BYRD'S EYE ENTERPRISES, INC.'S MOTION TO QUASH SUBPOENAS**

COME NOW, Mary Phillipa Sledge, Mary Jane Pidgeon Sledge Trust, and Pidgeon Sledge Family Limited Partnership ("Plaintiffs"), by and through counsel, and file this response in opposition to the Motion to Quash Subpoenas (the "Motion") filed by Michael Byrd ("Byrd") and Byrd's Eye Enterprises, Inc. (collectively, the "Movants"). (ECF No. 86). Plaintiffs have obtained evidence showing that Defendants have engaged in a pattern of moving Plaintiffs' money through multiple accounts, domestic and abroad, all as part of the alleged scheme at the heart of this litigation.[1] Although not named parties to the litigation, the Movants claim to have invested more than $250,000 with Defendants in an alleged gold investment identical to the scheme perpetrated upon Plaintiffs. In contrast to Plaintiffs, Movants – who are close friends

---

[1] *See, for example,* the summary of offshore transfers from Defendants' accounts with Chase Bank and Bank of America, "*Summary*", attached hereto as **Exhibit C**. Note: This exhibit also includes a complete wire transfer ledger of one of Defendants' Bank of America accounts showing funds wired in and out.

1

with Defendants - claim total confidence that their investment with Defendants will bear fruit in the absence of any evidence tending to support such confidence. Movants provided these funds to Defendants almost one year ago (more than a year after the commencement of this litigation). At deposition, Michael Byrd offered a highly implausible explanation for the source of these funds and Plaintiffs believe that the funds invested by Movants may have actually been derived in part or in full from Plaintiffs' investments or are alternatively, evidence or fruits of the fraud alleged in the Complaint. Plaintiffs wish to examine the bank accounts identified by Michael Byrd at deposition to test the veracity of his explanation for the source of the funds and to examine whether they are, alternatively, related in any way to the fraud alleged in the Complaint.

Accordingly, Plaintiffs oppose the Motion and would show that Movants have offered no authority for their position that the materials sought implicate any "privileged information, protected information, private information, irrelevant information, and commercial information" and that, based on Michael Byrd's deposition testimony, the request is not overly broad. Accordingly, the requested documents must be produced pursuant to Rule 45, and the Movant's Motion to Quash should be denied.[2]

In the alternative, and in the interests of judicial efficiency, Plaintiffs would not oppose a reasonable protective order concerning the materials provided pursuant to the subpoenas.

---

[2] *See R. Prasad Industries v. Flat Irons Environmental Solutions Corp.*, 2014 WL 2804276 at *9 (D.Ariz. 2014) (Denying non-party's motion to quash Rule 45 subpoena for nonparty's bank records); *F.T.C. v. Trudeau*, 2012 WL 5463829, at *3 (N.D. Ohio Nov. 8, 2012) (Denying nonparty's motion to quash subpoena of nonparty's bank records because nonparty did not have standing to file motion and failed to demonstrate any harm or prejudice flowing from the release of banking records in which it had no privacy interest).

## FACTS

This is a fraud action, commenced on June 29, 2013, in which Plaintiffs specifically allege Defendants induced Plaintiffs to invest $5 million in a bogus scheme to purchase and import unrefined gold dust from Ghana between 2011 and 2013.[3] (ECF No. 1). Discovery in this matter commenced in early 2015 and, during the course of same, Plaintiffs have discovered multiple investors and evidence that Defendants used investors' funds, without authority, for personal benefit.[4] Additionally, Plaintiffs have discovered that Defendants have transferred millions of investor dollars to a foreign account owned by Defendant Indico Systems Resources, Inc., controlled by an Indico employee and kept in United States Dollars, all potentially to keep the money beyond the reach of this Court.[5] Among the individuals and entities that wired funds to Defendants are the Movants. (Ex. A).

In fact, Defendants received at least $250,000 in wire transfers to its bank accounts from an entity called Byrd's Eye Enterprises, Inc. in July 2014 (See Watts' Bank Records, attached hereto as Exhibit A). Not four months later, Defendants used a portion of those funds to pay its erstwhile Memphis counsel, Baker Donelson, for legal defense in this matter. (Ex. D).[6] Plaintiffs subpoenaed Michael Byrd, the only registered agent and officer of Byrd's Eye Enterprises, Inc., to a deposition in Dallas, Texas on June 9, 2015. (ECF No. 60).

---

[3] Plaintiffs allege a number of additional causes of action, including conversion, trover, misrepresentation, negligent misrepresentation, violation of Tennessee Consumer Protection Act, violations of the Securities and Exchange Act of 1933 and 1934, breach of contract, breach of fiduciary duty, negligence, fraudulent conveyance, and for punitive damages.  *See* Complaint, ECF No. 1.

[4] Bank records show Defendant Watts spent hundreds of thousands of dollars coming into his accounts from Plaintiffs and other investors for fast food, online shopping and other international transactions for a period of years. These records were procured pursuant to subpoena and made available to Defendants during discovery.  *See* **Exhibit D** hereto for a four-month sample of some of these bank statements.

[5] *See Summary*, Ex. C.

[6] The months featured in this exhibit, which are exemplary of Defendant Watts' monthly spending, cover the months July through December 2014, and reveal no other source for the funds that Defendants used to pay Baker Donelson other than those received from Movants.

At his deposition, Byrd testified that he and Defendant Cleal Watts III ("Watts") are close friends and had spoken the previous day (prior to Byrd's deposition). (Transcript, Ex. B, p. 17: 4-6). The two speak to each other daily. (*Id.*, p. 21: 13-14). Watts was a groomsman at two of Byrd's prior weddings. (*Id.,* p. 21: 23-25, 22: 1-4).

Byrd testified that his wife earns approximately $80,000 per year in gross income as an occupational therapy assistant. (Transcript, Ex. B, p. 9: 8-16). Byrd earns approximately $20,000 per year as a physical therapy assistant. (*Id.*, p. 12: 10-14). Byrd and his wife have no other sources of income. (*Id.,* p. 12: 14-18). Byrd owns no real property. (*Id.,* p.11: 1-14). Byrd has not inherited any money. (*Id.*, p. 49: 11-12). Byrd's Eye Enterprises, Inc. is an S corporation, registered to do business in Texas, founded by Michael Byrd in 1997. (*Id.,* p. 14: 20-22). This entity ostensibly provides "personal fitness programs" for its clients. (*Id.,* p. 14: 1-6). At his deposition, Michael Byrd testified that Byrd's Eye Enterprises, Inc. grosses approximately $3,000 annually. (*Id.,* p. 13: 20-21).

In mid-July of 2014, Byrd invested $250,000 in Defendants' alleged gold business. (*Id.,* p.22: 22-23; 25: 1-4). There was no doubt among Byrd and Defendants that the money was an investment in gold, and not a down payment or a loan. (*Id.*, p. 34: 20-25). Watts told Byrd there were other investors in his gold business. (*Id.,* p. 24: 4-7). Byrd conducted no due diligence before investing and testified that his confidence in Watts derived completely from his relationship with him and his faith in him. (*Id.,* p. 37: 4-10). Watts told Byrd that he would experience a twenty percent (20%) return on any investment with him. (*Id.,* p. 24: 14-17). As a result of "shipment delays and whatnot," Byrd subsequently provided Defendants an additional $20,000 to $30,000. (*Id.,* p. 25: 3-22). The money Byrd invested with Defendants came from both Byrd personally, and from Byrd's Eye Enterprises, Inc. (*Id.,* p. 27: 11-18). On those

4

occasions when Defendant Watts has asked for additional funds, Byrd simply withdrew it from the bank and given it to Watts in cash. (*Id.,* p. 31: 20-25). Byrd testified that both he and Byrd's Eye Enterprises,, Inc. maintain accounts at Chase, Wells Fargo and Sea West Coast Guard Federal Credit Union. (*Id.*, p. 32: 1-13). Byrd further testified that he paid Watts from each of these accounts. (*Id.,* p. 37: 21-24; p. 38: 1-7; p. 40: 1-10).

At his deposition, Byrd testified that the funds he invested with Watts were the results of prior Byrd's Eye investments. (Transcript, Ex. B., p. 27: 11-25). Specifically, Byrd testified that the $250,000 he gave to Defendants was the result of a prior investment with a Nevada entity called Front Sight. (*Id.* p. 28: 2-5; 13-2003). He estimated that this "Front Sight" investment occurred between 1997 and 2000. (*Id.*, p. 50: 13-14). He claims the "Front Sight" investment was a development investment. (*Id.,* p. 49: 24-25). He claims he initially invested $3,000 in "Front Sight" and realized a return of $250,000. (*Id.*, p. 50: 15-23). He testified that his ex-wife, with whom he last spoke in 2007 or 2008, knew that he was doing business with Front Sight. (*Id.,* p. 49: 5-23)*.* He took that profit and put it in Byrd's Eye Enterprises, Inc.'s bank account, but did not report it as income on the entity's tax returns. (*Id*., p. 53: 1-6; 10-15). He transferred it all to Defendants in July 2014.

Byrd testified that his investment with Defendants comprised his "life savings." (Transcript, Ex. B., p. 57: 14-15). To date, Byrd claims Watts has neither given him any money nor any gold. (*Id.,* p. 28: 12-13, 25; p. 29: 1-3). Byrd testified that although he has never seen any evidence of Defendants' having successfully importing and refining gold on a previous occasion (*Id.,* p. 23: 6-8), he is "99.9 percent confident" that Defendant Watts will deliver on his promises. (*Id.,* p. 59: 13-15). This confidence derives strictly from his history with Watts. (*Id*., p. 59: 16-18; p. 63: 6-17).

## **LEGAL STANDARD**

Fed.R.Civ.P. 45(d) governs motions to quash subpoenas. The Rule requires that on timely motion, the Court must quash subpoenas requiring "disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed.R.Civ.P. 45(d)(3)(A)(iii). Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena. *Black v. Kyle-Reno,* 2014 WL 667788, at *2 (S.D.Ohio 2014). Courts have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26. *Id.* Rule 26 discovery under the federal rules is generally broad and liberal and parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. *Id.* The movant bears the burdens of persuasion and proof on its motion to quash the subpoenas. *Black v. Kyle-Reno*, 2014 WL 667788, at *1 (S.D.Ohio,2014) (citing *Hendricks v. Total Quality Logistics*, LLC, 275 F.R.D. 251, 253 (S.D.Ohio,2011); *Recycled Paper Greetings, Inc. v. Davis,* 2008 WL 440458, at *3 (N.D.Ohio Feb.13, 2008)). A nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted. *Taylor v. Universal Auto Group I, Inc.*, 2015 WL 1810316, at *4 (S.D.Ohio,2015) (citing *Great Lakes Transp. Holding, LLC v. Yellow Cab Serv. Corp. of Florida, Inc.,* 2011 WL 2533653, at *1 (E.D.Mich. 2011); 9A Wright & Miller, Federal Practice and Procedure § 2463.1).

Movants have failed to meet their burden of demonstrating that the subpoenas should not be enforced. Their Motion is comprised entirely of conclusory assertions that the materials sought are 1) protected or privileged, without a single citation to authority in support of this proposition; 2) irrelevant because the Movants are not parties to the action; and 3) overly broad because the time period referenced precedes the period alleged in Plaintiffs' Complaint. Because

Movants have failed to meet their burden and, in light of the legal argument presented forthwith, the Motion should be denied.

## LEGAL ARGUMENT

Plaintiffs believe that Movants' bank records contain important documentary evidence that will contravene Movant Michael Byrd's sworn deposition testimony and will further reveal the methods by which Defendants manipulated investors' funds in furtherance of the gold scheme described in the Complaint. Movants argue that the bank records are privileged or protected and therefore the subpoenas must be quashed; Movants offer no support for this assertion and, in fact, the relevant legal authority does not support it. Movants further argue that the subpoenas are irrelevant because Movants are not parties to the litigation and overly broad because they seek records pre-dating the wrongs alleged in Plaintiffs' Complaint. As shown, none of these reasons is sufficient, in light of the law and facts, to justify quashing Plaintiffs' subpoenas.

    i.    <u>Movants' bank records are not "privileged or protected matters."</u>

Federal Rule of Evidence 501 provides the framework for determining whether material sought in discovery is privileged.[7] Rule 501 specifies that, unless the "rule of decision" is governed by state law, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the Courts of the United States in the light of reason and experience. *Delozier v. First Nat. Bank of Gatlinburg*, 109 F.R.D. 161, 163 (E.D.Tenn. 1986). In federal question cases, questions of privilege are governed by federal common law. *Power & Telephone Supply Co., Inc. v. Suntrust Banks, Inc.*, 2004 WL 784822, at *2 (W.D.Tenn. 2004) (citing *Reed v. Baxter,*

---

[7] *See R. Prasad Industries v. Flat Irons Environmental Solutions Corp*., 2014 WL 2804276, at *4 (D.Ariz.,2014).

134 F.3d 351, 355 (6th Cir.1998)).[8] A banker-depositor privilege was not recognized at common law. *Id* (citing *Limburg, The Bankers and Brokers Privilege,* 25 Col.L.Rev. 152 (1925)). As the federal courts have stated, such a banker-depositor privilege does not exist in the Federal courts. *Delozier*, 109 F.R.D. at 163 (citing *United States v. Prevatt,* 526 F.2d 400, 402 (5th Cir.1976); *Harris v. United States,* 413 F.2d 316, 317 (9th Cir.1969); *Stark v. Connally,* 347 F.Supp. 1242, 1248 (N.D.Cal.1972), *modified on other grounds,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974). *Rosenblatt v. Northwest Airlines, Inc.,* 54 F.R.D. 21 (S.D.N.Y.1971); *Societe Internationale v. McGranery,* 111 F.Supp. 435, 443 (D.D.C.1953)). Because the instant case is filed and arises pursuant to federal question jurisdiction, and because there is no privileged relationship between bankers and their customers recognized in the federal courts, Movants may not rely on an argument of "privilege" to support their Motion to quash the subject subpoenas. Critically, Movants have not identified or directed this Court to any authority to the contrary or any support for their conclusory assertion that their motion to quash pursuant to Rule 45(d)(3)(A)(iii) should be granted pursuant to any particular privilege.

Similarly, Movants have not articulated any basis for their assertion that the subject bank records comprise "protected" matters, as contemplated by Rule 45(d)(3)(A)(iii). Some federal courts have held that a party has no standing to challenge a subpoena issued to his or her bank seeking discovery of financial records because bank records are the business records of the bank, in which the party has no personal right. *U.S. v. Gordon*, 247 F.R.D. 509, 510 (E.D.N.C. 2007).[9]

---

[8] Where there are pendent state claims, federal common law still governs all claims of privilege. *Power & Telephone Supply Co., Inc. v. Suntrust Banks, Inc.*, 2004 WL 784822, at *2 (W.D.Tenn.,2004)

[9] *See, also Leanders v. Yassai (In re Yassai),* 225 B.R. 478, 481–82 (Bankr.C.D.Cal.1998) (finding a nonparty who had engaged in business dealings with the defendant, and who wished to quash a subpoena issued to a financial institution, also a nonparty, did not have standing under Rule 45(d)(3)(A) to make such a motion despite the movant's privacy interest in the financial records sought).

8

The United States Supreme Court has articulated the same premise in the civil context.[10] The state of Tennessee, where the action is pending, requires that a financial institution may disclose financial records relating to a customer in response to a lawful subpoena. TENN. CODE ANN. § 45-10-104. Texas Courts, where the Movants reside, have also acknowledged that Texas statutes plainly provide that "[t]his section ... does not create a right of privacy in a [financial institution] record [.]" *Martin v. Darnell*, 960 S.W.2d 838, 843 (Tex.App. Amarillo,1997) (citing TEX.CIV.PRAC. & REM.CODE § 30.007(b) (Vernon 1997)). Even assuming, *arguendo*, that Movants have standing to bring their Motion, they must offer more than "vague legal conclusions and speculat[ions]" about the existence of a threatened personal privilege to actually succeed on the motion. *U.S. v. Gordon*, 247 F.R.D. 509, 510 (E.D.N.C.,2007). They have failed to meet this standard.

Because Movants have not articulated any support for their assertion that the subject bank records are protected or privileged, their Motion should be denied.

  ii. *The fact that Movants are not parties to this action has no bearing on whether their bank records are relevant.*

Movants' bank records are relevant because Michael Byrd has testified that, like Plaintiffs, he has invested significant sums of personal monies in Defendants' gold business and, like Plaintiffs, he has seen no returns on his investment. If Michael Byrd is to be believed, his experience with Defendants is very similar to the experience described by Plaintiffs in their Complaint. Two critical distinctions make Byrd's financial records particularly relevant. First,

---

[10] In *United States v. Miller* the Supreme Court held that financial documents subpoenaed from a third-party bank were not the defendant's "private papers", but rather, "[they] are the business records of the banks." *Robertson v. Cartinhour*, 2010 WL 716221, at *2 (D.Md.,2010) (citing *United States v. Miller,* 425 U.S. 435, 440, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1975) (abrogated in part by statute)). Although *Miller* has been abrogated by statute in part, its application to civil matters remains authoritative. *Id.*

he and Watts are close, personal friends and have been for two decades; they communicate every day.  Second, Byrd's stated explanation about how he got $250,000 to invest with Watts (which *followed* Plaintiffs' investments) simply defies credulity.  Plaintiffs are entitled to examine Movants' financial records to determine whether any of *their* funds were provided to Movants or mingled with Movants' funds in an effort to conceal the true nature of Defendants' fraud.

Reach of a subpoena issued pursuant to FED.R.CIV.P. 45 is subject to the general relevancy standard applicable to discovery under FED.R.CIV.P. 26(b)(1).  *Travelers Cas. & Sur. Co. of American v. Pascarella*, 2011 WL 2149524, at *1 (E.D.Tenn. 2011)(citing *Laethem Equip. Co. v. Deere and Co.,* 2007 WL 2873981, *4 (E.D.Mich.2007)).  Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense.... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id*.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Generally, "[i]f any documents sought by the subpoena are relevant and are sought for good cause, then the subpoena should be enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing." *F.T.C. v. Trudeau*, 2012 WL 5463829, at *2 (N.D.Ohio,2012).

The fact that Movants are not parties to this action does not exclude them from civil discovery.  FED.R.CIV.P. Rule 45 expressly provides for discovery upon non-party witnesses. Through discovery, Plaintiffs have learned that Movants invested more than $250,000 in a gold investment identical to the one alleged to be fraudulent in the Complaint.  At his deposition, Michael Byrd testified he got this money to invest from a prior investment whose structure defies the imagination.  This deposition testimony, Byrd's close personal relationship with Watts, and

10

his inexplicable confidence in Watts' ability to consummate the alleged gold transaction (absent any evidence of such an ability) together raise reasonable questions about Byrd's knowledge and involvement in the conduct described in the Complaint.  Plaintiffs must have the opportunity to determine whether their funds moved through Movants' accounts and whether Movants' accounts were involved, in any way, in the scheme alleged in the Complaint.

Movants' financial records will either support or impeach his sworn testimony about his significant investment with Watts and the derivation thereof.  These records, because they reflect conduct so closely related to the conduct described in the Complaint, involve the same individuals (Defendants), the same investment, the same delays, the same promises and the same failed returns are, at the very least, reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, and in light of the broad and liberal discovery standard permitted under the relevant rules of civil procedure, Movant's motion to quash should be denied.

    iii.    *<u>The subpoenas are not overly broad simply because they seek information pre-dating the events alleged in the Complaint</u>*.

The subject subpoenas clearly direct the responding entities to produce easily identifiable material created during a definite period, specifically, the period during which Michael Byrd claims he generated the funds he used to invest with Defendants.  Accordingly, the fact that this period pre-dates the events described in the Complaint does not render these requests overly broad and subject to quash.  Courts may find requests overly broad when they are couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within [their] scope. *In re New England Compounding Pharmacy, Inc. Products Liability Litigation*, 2013 WL 6058483 (D.Mass.)(citing *Western Resources, Inc. v. Union Pacific Railroad Co.*, 2002 WL 1822430, at *2 (D.Kan. July 23, 2002)).  For example, requests

may be overly broad when they are neither limited in time nor confined to any discrete subject matter. *Western Resources, Inc.*, 2002 WL 1822430 at *3. Also, courts have observed that while use of broad terms such as 'relate to' or 'relating to' do not necessarily direct an individual or entity to determine what documents may or may not be responsive, reading requests to seek documents "reflecting" or "concerning" a particular topic may be appropriate. *Id*.

Michael Byrd testified at his deposition that he invested more than $250,000 in 2014 in Defendants' alleged gold business. When asked where he came up with so much money to invest, Byrd – who admitted he and his wife have a gross annual income of $100,000, no property, and have inherited no money – claimed he generated a quarter of a million dollars from an investment beginning in 2007 or 2008 with a Nevada entity called Front Sight. He claims he gave it all to Defendants. Byrd testified that he was close with Defendant Watts during this period and has remained close with him. Furthermore, Byrd's testimony about his confidence in Watts' abilities absent any proof of same, and his willingness to give Watts such a significant amount of money, raise reasonable questions about whether Byrd is being truthful about the source of the funds he gave Defendants.

After Byrd identified accounts held by Movants at various financial institutions, Plaintiffs issued subpoenas to these institutions to determine the veracity of Byrd's statements. The subject subpoenas are limited to Movants' transactions dating between 2008 and the present. Plaintiffs believe that Movants' bank records dating back to 2008 are critical to determining whether he is being truthful about his relationship with Defendants and his knowledge about the allegations of the Complaint. Moreover, Plaintiffs wish to determine whether any of the funds

provided to Defendants by Movants originated from Plaintiffs' investments. Accordingly, the subpoenas are not overly broad and should not be quashed.[11]

## CONCLUSION

For the foregoing reasons, the Motion should be denied. In the alternative, Plaintiffs would not oppose a reasonable protective order limiting dissemination of the subpoenaed materials.

Respectfully Submitted,

/s/ Darrell N. Phillips
PIETRANGELO COOK PLC
Anthony C. Pietrangelo BPR # 15596
John J. Cook BPR # 17725
Darrell N. Phillips BPR #30299
6410 Poplar Avenue, Suite 190
Memphis, TN 38119
901.685.2662
901.685.6122 (fax)
*jjcook@pcplc.com*
**Attorneys for Plaintiffs**

---

[11] *See R. Prasad Industries v. Flat Irons Environmental Solutions Corp.*, 2014 WL 2804276 at *9 (D.Ariz. 2014) (Denying non-party's motion to quash Rule 45 subpoena for nonparty's bank records); *F.T.C. v. Trudeau*, 2012 WL 5463829, at *3 (N.D. Ohio Nov. 8, 2012) (Denying nonparty's motion to quash subpoena of nonparty's bank records because nonparty did not have standing to file motion and failed to demonstrate any harm or prejudice flowing from the release of banking records in which it had no privacy interest).

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on this 15th day of July 2015, a copy of the foregoing electronically filed document was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party.

| | |
|---|---|
| Randall Fishman | Loys A. "Trey" Jordan, III |
| Richard Townley | Joseph B. Baker |
| Ballin, Ballin & Fishman | 5400 Poplar Ave., Suite 330 |
| 200 Jefferson Ave., Suite 1250 | Memphis, TN  38119 |
| Memphis, TN 38103 | (901) 526-0606 |

                 /s/ Darrell N. Phillips