# EXHIBIT

# E

Excerpts of Deposition of

Ed Pritzkau

```
 1                UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TENNESSEE
 2

 3   MARY PHILLIPA SLEDGE, MARY   )
     JANE PIDGEON SLEDGE TRUST,   )
 4   and PIDGEON SLEDGE FAMILY    )
     LIMITED PARTNERSHIP,         )
 5                                ) CIVIL ACTION
                 Plaintiffs,      )
 6                                ) NO.: 2:13-cv-2578
     VS.                          )
 7                                )
     INDICO SYSTEM RESOURCES,     )
 8   INC. and CLEAL WATTS, III,   )
                                  )
 9               Defendants.      )

10          ------------------------------------

11              ORAL AND VIDEOTAPED DEPOSITION OF

12                         ED PRITZKAU

13                      NOVEMBER 13, 2015

14          ------------------------------------

15         ORAL AND VIDEOTAPED DEPOSITION OF ED PRITZKAU,

16   produced as a witness at the instance of the Plaintiffs,

17   and duly sworn, was taken in the above-styled and

18   numbered cause on November 13, 2015, from 1:19 p.m. to

19   1:33 p.m., via telephone, before Julie A. Couvillion,

20   CSR in and for the State of Texas, reported by machine

21   shorthand, at the offices of Esquire Deposition

22   Solutions, located at 1700 Pacific Avenue, Suite 1000,

23   in the City of Dallas, County of Dallas, State of Texas,

24   pursuant to the Federal Rules of Civil Procedure and the

25   provisions stated on the record or attached hereto.
```



800.211.DEPO (3376)  
EsquireSolutions.com

```
 1                    A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFFS:              (Via telephone)

 4       MR. DARRELL N. PHILLIPS
         Pietrangelo Cook, PLC
 5       6410 Poplar Avenue
         Suite 190
 6       Memphis, Tennessee 38119
         (901) 685-2662
 7       (901) 685-6122 (fax)
         dphillips@pcplc.com
 8

 9   FOR THE DEFENDANTS:              (Via telephone)

10       MR. RICHARD S. TOWNLEY
         Ballin, Ballin & Fishman, PC
11       200 Jefferson Avenue
         Suite 1250
12       Memphis, Tennessee 38103
         (901) 525-6278
13       (901) 525-6294 (fax)
         richard@bbfpc.com
14

15

16   ALSO PRESENT:

17       Ms. Lisa Block - Videographer

18

19

20

21

22

23

24

25
```



|   |                                     |      |
|---|-------------------------------------|------|
| 1 | INDEX                               |      |
| 2 |                                     | PAGE |
| 3 | Appearances                         | 2    |
| 4 |                                     |      |
|   | ED PRITZKAU                         |      |
| 5 |     Examination by Mr. Phillips     | 4    |
| 6 |                                     |      |
| 7 |                                     |      |
| 8 | Reporter's Certificate              | 16   |



Case 2:13-cv-02578-STA-cgc   Document 138-7   Filed 01/08/16   Page 5 of 10   PageID 1363

ED PRITZKAU
SLEDGE vs. INDICO SYSTEM RESOURCES
November 13, 2015
4

1              P R O C E E D I N G S

2       THE VIDEOGRAPHER:  We're going on the
3  record November 13th, 2015 for the deposition of Ed
4  Pritzkau in the case styled Mary Phillipa Sledge, et al.
5  versus Cleal Watts, III, et al., in the United States
6  District Court for the Western District of Tennessee,
7  Civil Action Number 13-2578-STA.

8       The court reporter is Julie Couvillion.  My
9  name is Lisa Block and I'm the videographer.  The time
10 is now 1:19.

11      Will counsel present and by phone please
12 state their names and who they represent for the record,
13 following will the court reporter swear in the witness.

14      MR. PHILLIPS:  My name is Darrell Phillips
15 and I represent the plaintiffs in this action.

16      MR. TOWNLEY:  Richard Townley for the
17 defendants.

18                ED PRITZKAU,
19 having been first duly sworn, testified as follows:
20                EXAMINATION
21 BY MR. PHILLIPS:

22   Q.  Mr. Pritzkau, good afternoon.  This is Darrell
23 Phillips.  I'll be doing most of the talking at least
24 for the first part of this.

25      I know you're here under subpoena, but I

Case 2:13-cv-02578-STA-cgc   Document 138-7   Filed 01/08/16   Page 6 of 10   PageID 1364

ED PRITZKAU                                          November 13, 2015
SLEDGE vs. INDICO SYSTEM RESOURCES                                    6

1    Q.  Today is your birthday.  Happy birthday.
2    A.  Thank you.
3    Q.  I did not know that.  That makes me feel even
4 more guilty about having you here on this day.  I'll be
5 as quickly -- as quick as possible.
6          You know that the -- that the litigation is
7 about or involves to some degree the defendant Cleal
8 Watts.
9          When was the last time you spoke with Cleal
10 Watts?
11   A.  I called him the moment I received your
12 subpoena.
13   Q.  And what did you discuss with him?
14   A.  I just wanted to know what this was all about.
15 I wanted to know who Sledge -- Sledge was.  I never
16 heard of her.
17   Q.  And what did he tell you?
18   A.  He said that she was one of his investors.
19   Q.  Is that all he said?
20   A.  Yeah.
21   Q.  Did he give you any direction about how to
22 testify today?
23   A.  No, no, he was totally disinterested.
24   Q.  Totally disinterested.  Okay.  Tell me,
25 Mr. Pritzkau, how much did you invest with Cleal Watts?



Case 2:13-cv-02578-STA-cgc Document 138-7 Filed 01/08/16 Page 7 of 10 PageID 1365

ED PRITZKAU  
SLEDGE vs. INDICO SYSTEM RESOURCES  
November 13, 2015  
7

```
 1        A.   Oh, a bunch.
 2        Q.   How much, sir?
 3        A.   50,000.
 4        Q.   Okay.  And do you remember when that was?
 5        A.   Yeah, it was, I believe, in 50 -- 19 -- 2006, I
 6   believe, 2006.
 7        Q.   Okay.  How did you -- how did you -- what
 8   circumstances arose that lead to you investing with him?
 9        A.   I didn't get the question.
10        Q.   How did you end up investing with him?
11        A.   He just presented as a good -- good investment.
12        Q.   How did you meet him?
13        A.   Through John Chu.
14        Q.   And what was the context of that introduction?
15   Why did he introduce you?
16        A.   Okay.  At that time, I was acquiring a little
17   investment property and I was looking for a mortgage
18   broker and John Chu happened to be one and that's how we
19   got acquainted.
20        Q.   And why did he introduce you to Mr. Watts?
21        A.   Well, just in conversation, he said he did this
22   and that and he got this going and that going and
23   presented the -- the gold opportunity which is to become
24   real -- realistic eminently.
25        Q.   And what did -- what did Mr. Watts tell you
```



```
 1  about his experience with gold?
 2       A.   Mainly, I was talking with John Chu.
 3       Q.   Did you -- did you ever talk to Mr. Watts about
 4  his experience with gold?
 5       A.   Well, he said that he had been there and knew
 6  the elders that ran the gold mine there and that he had
 7  a personal relationship with them.
 8       Q.   Did he tell you that he had ever imported gold
 9  before?
10       A.   I don't recall that.
11       Q.   Did he tell you how much money you would make
12  if you invested with him?
13       A.   Oh, that seemed to change from -- from -- from
14  one month to the other depending on how quickly he was
15  going to be able to get the gold and then he needed more
16  money and more money and more money.
17       Q.   In the -- in the beginning, did he tell you how
18  much -- did he give you any impression that you recall
19  about what you were expecting to enjoy in terms of
20  return on investment?
21       A.   Yeah, initially it was 100 percent.
22       Q.   So you were going to double your investment?
23       A.   Yeah.
24       Q.   Okay.  And you said you gave him $50,000.  Was
25  that all at once or was that over a period of time?
```



Case 2:13-cv-02578-STA-cgc   Document 138-7   Filed 01/08/16   Page 9 of 10   PageID 1367

ED PRITZKAU											November 13, 2015
SLEDGE vs. INDICO SYSTEM RESOURCES									9

1    A.  No, it was one -- one sum.
2    Q.  Okay.  And you said that was in 2006.  Do you
3 remember how you paid him?  Did you wire the money to
4 him or give him cash?
5    A.  Yeah, I believe I transferred the money to a
6 Chase account.
7    Q.  Okay.
8    A.  No, no, it was Bank of America.
9    Q.  Okay.  And how much money did you get back?
10   A.  Zero.
11   Q.  Zero.  To date, you've still not received
12 anything?
13   A.  Not a dime.  Still hopeful.
14   Q.  I will tell you that I spoke with John Chu a
15 year ago and he told me on the phone that you guys were
16 paid.  Is that totally inaccurate?
17   A.  That's a lie.
18   Q.  Okay.  Did you -- did you confront -- did you
19 ever confront Cleal Watts about where the -- where the
20 gold was or where your money was?
21   A.  Oh, yeah, I talked with him in the past
22 frequently and he said it was tied up in customs in New
23 York or in Amsterdam somewhere and that it was --
24 required more fees for the storage over there and he
25 never really could put it together and it never came off



Case 2:13-cv-02578-STA-cgc   Document 138-7   Filed 01/08/16   Page 10 of 10   PageID 1368

ED PRITZKAU                                                    November 13, 2015
SLEDGE vs. INDICO SYSTEM RESOURCES                                            12

1    Q.  Do you remember asking John Chu or Cleal Watts
2 for a letter memorializing your investment?
3    A.  No, I haven't.
4    Q.  You have no recollection of that?
5    A.  No, I -- if I had the letter, I would have
6 brought it.
7    Q.  Okay.  Have you ever contacted any law
8 enforcement about this investment?
9    A.  No.
10   Q.  Okay.  Hang on one second.
11       Do you know a man named Chris Harris?
12   A.  Yeah, Chris Harris was one of the investors.
13   Q.  Who is he?  How do you know him?
14   A.  Well, I met him one time when he needed more
15 money and --
16   Q.  Was he with Dr. Watts?
17   A.  Yeah, Watts.  We met him at a restaurant, I
18 forget which one, and he asked each one of us to -- to
19 come up with some cash.  And Chris declined and I gave
20 him the $3,000 that I mentioned previously.
21   Q.  Okay.  Do you know where Chris Harris lives?
22   A.  No, I have no idea.
23   Q.  Have you ever communicated with him separate
24 and apart from that meeting?
25   A.  No.

