# EXHIBIT 7

# TO PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR INJUNCTIVE RELIEF, INCLUDING ASSET FREEZE, ACCOUNTING AND REPATRIATION OF ASSETS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

MARY PHILLIPA SLEDGE, MARY
JANE PIDGEON SLEDGE TRUST, and
PIDGEON SLEDGE FAMILY LIMITED
PARTNERSHIP,

      Plaintiffs,

v.                                                            Case No. 2:13-cv-2578-STA-cgc

INDICO SYSTEM RESOURCES, INC. and
CLEAL WATTS, III,

      Defendants.

## DEFENDANTS' ANSWERS TO PLAINTIFFS'
## FIRST SET OF INTERROGATORIES

Comes now Defendants, Indico System Resources, Inc. and Cleal Watts, III ("Defendants" or "Watts"), by and through its counsel of record, and responds to Plaintiffs' First Set of Interrogatories as follows:

**INTERROGATORY NO. 1:**   Identify each person involved in answering these Interrogatories, including but not limited to any person that was requested to provide information in response to the Interrogatories or any Interrogatory, any person to whom you provided a copy of the Interrogatories (in whole or in part), any person who reviewed the responses to the Interrogatories (in whole or in part), and/or any person who provided information used, or considered but not used, in responding to the Interrogatories.

**RESPONSE:** Defendants.

**INTERROGATORY NO. 2:**   Identify all individuals who have invested with you for any purpose beginning in 2005, and for each identify the nature of the investment, the date of the investment, the status of the investment, and any proceeds you have retained.

**RESPONSE:** Defendants object to this Interrogatory as overbroad and unduly burdensome.  The Interrogatory seeks information pre-dating any of the alleged events that are the basis of Plaintiffs' Complaint.  Defendants further state that the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence as relationships between Defendants and other individuals are not relevant to Plaintiffs' cause of action against Defendants.  Plaintiffs' Complaint brings causes of actions with respect to Defendants' alleged actions as it relates to Plaintiffs' raw gold dust transactions.  Information regarding other individuals have no bearing on Plaintiffs' cause of action and claim for relief against Defendants.

**INTERROGATORY NO. 3:**   Identify all bank accounts, brokerage or trading accounts owned by you, or owned by any entity in which you have an interest, whether held inside or outside the United States, since 2011 and for each, provide the account number.

**RESPONSE:** Defendant Watts does not have any bank, brokerage, or trading accounts. Defendant ISR has had bank accounts with Chase (2064030419),  Bank of America (4880 3913 1096), and BBVA Compass (6714288707).  Defendant ISR has had a brokerage account with Rosenthal Collins, LLC and Stifel Nicolaus since 2011.

**INTERROGATORY NO. 4:**   identify each and every instance of in-person contact you have had with Sheku Kondeh (spelled Sekou Condeh in your initial disclosures), and for each identify the purpose, the date and the location.

**RESPONSE:** Defendants object to this Interrogatory as overly broad and unduly burdensome as it is not limited in scope or time to relevant issues.  Without waiving the

foregoing objection, Defendant Watts went to Guinea in late December of 2011 and met with Sekou Conde at various times related to the gold dust transactions at issue in this lawsuit.

**INTERROGATORY NO. 5:** *Identify each and every instance of in-person contact* you have had with Patrick Koroma, and for each identify the purpose, the date and the location.

**RESPONSE:** None.

**INTERROGATORY NO. 6:** Identify each and every instance of in-person contact you have had with the following individuals identified in your initial disclosures, and for each *identify the purpose, the date and the location:*

        a.     John Acheopong;

        b.     Chief Alimamy Kamara;

        c.     Ibrahim Kamara;

        d.     Mr. Komba;

        e.     *Saliu Jah;*

        f.     Alagi Kuyateh; and

        g.     Any agent of Mano River Union Enterprise Ltd.

**RESPONSE:** Defendants have not had any in-person contact with the individuals listed in subparts a-g of Interrogatory No. 6.

**INTERROGATORY NO. 7:** *Describe with specificity the role played by each of the* following individuals (identified in your initial disclosures) with respect to the gold dust transactions which are the subject of this lawsuit:

        a.     Sheku Kondeh (spelled Sekou Condeh in your initial disclosures);

                Sekou Conde managed affairs in Africa, making sure that the *monies were paid to freight forwarders, insurance companies, the*

3

chiefs for signing contracts, for hiring the lawyers, and other various expenses related to getting shipments of gold dust to the *States*.

b.    Patrick Koroma; The gold shipment was en route from Sierra Leone and Guinea to Texas.  On a stop in Ghana, a chief from Guinea went to the high court in Ghana ahead of time and alleged that the entire shipment belonged to him.   The high court issued a *stop order so when the shipment got there, it was stopped. The* chief who the gold belonged to, Chief Alimamy Kamara, went to the Sierra Leone embassy in Ghana for help.  This is where Mr. Koroma comes into the picture. Mr. Koroma got the chief to sign the handling and managing the gold that was part of Sledge's *transactions; the chief let Koroma have power of attorney over the* shipment and managing it.  Koroma at this point became acting ambassador.  Koroma worked within the court system to put the crooks behind bars and the gold shipment was free.  During this time, the acting ambassador, Koroma, was patting the bill and *embezzling money.   But he still had power of the attorney as* owner of the gold shipment.  Through the chief and Conde, they worked to get revocation of power of attorney.   Now they're getting ready for the shipment.  Acheopong, the lawyer, had gone to the Ivory Coast and talked to the charter company and had *everything signed.  But you can't send money to lawyers in Ghana.*

4

So they sent it to Conde and the bank sent it to Sierra Leone embassy and to Koroma; Koroma changed the charter flight to *send it to the Grand Bahamas. Dr. Koroma kidnapped Kamara* after he was given power of attorney over the shipment on behalf of the chief. Kamara was on the plane. Government of Ghana recalls the shipment. They fired Dr. Koroma. Koroma sent the articles and court documents. Koroma also sent the insurance *documents.*

c. Darrow Dickey: He went over with Lawrence Watts to Guinea December 2011 to January 2012 for security for Cleal Watts.

d. Lawrence Watts: He went to Guinea as security in late December 2011 to accompany Cleal Watts.

e. *John Acheopong: He was the attorney in the Ghana court* proceedings representing Chief Alimamy Kamara in the dispute over the gold dust shipment.

f. Chief Alimamy Kamara: He was the owner of the gold dust that was to be shipped to the States.

g. *Ibrahim Kamara: He was the legal attache for the government of* Guinea and the Guinean representative to the United Nations. He helped keep Koroma from stealing the gold shipment after it was freed up after the Ghana court proceedings.

h.   Mr. Komba: This individual is believed to be an associate of Ibrahim Kamara who had some involvement with trying to prevent *Koroma from stealing the shipment of gold dust.*

i.   Saliu Jah: This individual is believed to be an associate of Dr. Patrick Koroma who had some involvement with trying to steal the shipment of gold dust.

j.   Alagi Kuyateh: This individual is believed to be with Nanko *Security.*

k.   Any agent of Mono River Union Enterprise Ltd.: Any agent of Mono River would have helped facilitate the shipment of gold dust to the States.

**INTERROGATORY NO. 8:** Describe with specificity all due diligence you *conducted relative to each of the individuals you identified in your initial disclosures.*

**RESPONSE:** Defendants object to this Interrogatory as vague and ambiguous, as the phrase "due diligence" is undefined and subject to varying interpretation. Moreover, it is not clear to Defendants what information is sought. With respect to the individuals identified in Defendants' initial disclosures as persons with knowledge, Defendants state that, pursuant to *Fed. R. Civ. P. 26, those individuals were believed to be persons with knowledge about the* matters of this lawsuit.

**INTERROGATORY NO. 9:** Identify with specificity your actions with respect to each transfer of funds to you by Plaintiffs and identify each financial institution which has possessed or negotiated those funds since they were transferred to you.

6

**RESPONSE:** Pursuant to Federal Rule of Civil Procedure 33, please see bank account statements from ISR's Chase and Bank of America bank accounts.

**INTERROGATORY NO. 10:** Identify all trips you have taken to the African continent since 2000, including the date, location and purpose of each, and identify your lodging for each trip.

**RESPONSE:** To the best of his memory, Defendant Watts has taken 3 trips to Guinea, in 2004, 2007, and at some point in 2011-2012. Defendant Watts would stay at Novatel Hotel in Conakry, Guinea when he traveled to Guinea.

**INTERROGATORY NO. 11:** Describe in detail the nature of the investment by John Chu in 2005 and the resolution of same, including the amount of initial investment, the date of resolution, and the source and amount of funds paid to Mr. Chu by you in 2011 and 2012.

**RESPONSE:** Defendants object to this Interrogatory as vague and ambiguous, as the term "investment" is undefined and subject to multiple interpretations, including a definition as a matter of law. Defendants further object to this Interrogatory as it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' Complaint alleges a cause of action against Defendants in relation to her gold dust transactions. Information regarding other individuals with relationships with Defendants have no bearing on the issues of this lawsuit.

**INTERROGATORY NO. 12:** Identify each successful import of unrefined gold dust by you into the United States and for each, identify the investors involved in each import, the dates of arrival, the storage location, the location of the refinery and the respective buyers of the refined gold.

**RESPONSE:** Defendants object to this Interrogatory as vague and ambiguous, as the term "investor" is undefined and subject to multiple interpretations, including a definition as a

matter of law.  Defendants further object to this Interrogatory as it is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' Complaint alleges a cause of action *against Defendants in relation to her gold dust transactions.  Information regarding other* individuals with relationships with Defendants have no bearing on the issues of this lawsuit. Defendants further object to this Interrogatory as overbroad and unduly burdensome as it is not limited in time to the relevant time period.

**INTERROGATORY NO. 13:** Identify the source of the Soft Corporate Offer form *contract sent by you to Plaintiffs.*

**RESPONSE:** The Soft Corporate Offer form was created by ISR.

**INTERROGATORY NO. 14:** Describe in detail your relationship with Celene Dutzman and identify all transfers of funds from either Defendant to her and the reasons therefor between January 1, 2007 and June 1, 2013.

**RESPONSE:** *Defendants object to this Interrogatory as it is not reasonably calculated to* lead to the discovery of admissible evidence.  Plaintiffs' Complaint alleges a cause of action against Defendants in relation to her gold dust transactions.  Information regarding other individuals with relationships with Defendants have no bearing on the issues of this lawsuit. Defendants further object to this Interrogatory as overbroad and unduly burdensome as the *interrogatory seeks information predating the events giving rise to this lawsuit.*

**INTERROGATORY NO. 15:** Describe the role played by Jim Wagner and Bristol 5 LLC relative to the facts alleged by Plaintiffs in the Complaint.

**RESPONSE:** On behalf of the chief who owned the gold dust, ISR retained Jim Wagner and Bristol 5 LLC to execute futures and commodities trades with some portion of the chief's

money which came from the funds paid by Plaintiffs as down payment for their gold dust transactions.

**INTERROGATORY NO. 16:** *Identify all transfers from either Defendant to Jim* Wagner and Bristol 5 LLC and the reasons therefor between January 1, 2007 and June 1, 2013.

**RESPONSE:** Defendants object to this Interrogatory as overbroad and unduly burdensome as the interrogatory seeks information predating the events giving rise to this lawsuit.  Subject to, and without waiving the foregoing objection, and pursuant to Federal Rule *of Civil Procedure 33, see ISR's bank account statements from Chase and Bank of America.* During the time period of the events giving rise to this lawsuit,  funds came from ISR to Jim Wagner and Bristol 5 LLC to pay for various expenses related to the consulting work being provided to the chief on trades, such as monthly fees for a subscription to Bloomberg.

**INTERROGATORY NO. 17:** Identify all transfers from either Defendant to Sheku *Kondeh (identified by you as Sekou Condeh) and the reasons therefor between January 1, 2007* and June 1,2013.

**RESPONSE:** Defendants object to this Interrogatory as overbroad and unduly burdensome as the interrogatory seeks information predating the events giving rise to this lawsuit.  Subject to, and without waiving the foregoing objection, and pursuant to Federal Rule *of Civil Procedure 33during the time period of the events giving rise to this lawsuit, see ISR's* bank account statements from Chase and Bank of America and spreadsheet listing all wires going from ISR's bank account to Sekou Conde's account on behalf of Chief Alimamy Kamara to pay for various expenses related to shipping gold dust, subject to the chief's approval.

**INTERROGATORY NO. 18:** Identify all computers used by you between January 1, *2010 and July 1, 2014 and for each, identify the current location and condition/status.*

9

**RESPONSE:** During this time period, Defendant Watts used one computer. This computer is in Dallas and its hard drive crashed.

**INTERROGATORY NO. 19:** *Identify all email accounts used by you between 2010 and July 2014.*

**RESPONSE:** Defendant Watts has one email account: Sami@usisr.com

**INTERROGATORY NO. 20:** Identify each person you intend to call as an expert witness and for each person, please state (1) his/her name, address, and telephone number, (2) *his/her field of expertise, (3) the subject matter on which he/she is expected to testify, (4) the* substance of the facts and opinions as to which he/she is expected to testify, (5) a summary of grounds for each opinion, (6) whether or not he/she has issued a written report and/or findings, (7) all publications authored by the expert in the past decade, (8) all other cases during the last four years in which the witness testified as an expert, and (9) the amount of compensation being *paid to the expert. NOTE: Plaintiff will object to any witness called at trial not previously and* *timely identified under this interrogatory.*

**RESPONSE:** Defendants state that it has not made a determination on expert witnesses it expects to call at trial. Defendants reserve the right to supplement the answer to this Interrogatory in accordance with the Federal Rules of Civil Procedure and/or any applicable *court order.*

**INTERROGATORY NO. 21:** Identify all refineries owned or used by you to refine gold dust at any point in time and for each, identify the date of service and the quantity of materials refined.

**RESPONSE:** Defendants do not own any refineries. Refineries used by Defendants was *Millennium at the relevant time period of the events giving rise to this lawsuit.*

**INTERROGATORY NO. 22:** Identify any funds you or Defendant Indico System Resources retained as a result of Plaintiffs' investments with you and, in each instance, identify *the location of the funds*.

**RESPONSE:** Defendants object to this Interrogatory as vague and ambiguous, as the term "investment" is undefined and subject to multiple interpretations, including a definition as a matter of law.   Pursuant to Federal Rule of Civil Procedure 33, see ISR's bank account statements.

**INTERROGATORY NO. 23:** *Describe with specificity each instance in which you* invested personally or invested Indico System Resources, Inc. funds in gold dust transactions.

**RESPONSE:** Defendants object to this Interrogatory as vague and ambiguous, as the term "invested" is undefined and subject to multiple interpretations, including a definition as a matter of law. Defendants further object to this Interrogatory as it is not reasonably calculated to *lead to the discovery of admissible evidence.  Plaintiffs' Complaint alleges a cause of action* against Defendants in relation to her gold dust transactions.  Information regarding Defendants' personal activity related to gold dust transactions have no bearing on the issues of this lawsuit.

**INTERROGATORY NO. 24:** Describe with specificity each instance in which a family member or relative invested personally with you in a gold dust transaction and, for each *instance, identify the investor, date and amounts of investment, and return on investment (if any)*.

**RESPONSE:** Defendants object to this Interrogatory as vague and ambiguous, as the term "invested" is undefined and subject to multiple interpretations, including a definition as a matter of law. Defendants further object to this Interrogatory as it is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' Complaint alleges a cause of action

11

against Defendants in relation to her gold dust transactions.  Information regarding Defendants' personal activity related to gold dust transactions have no bearing on the issues of this lawsuit.

**INTERROGATORY NO. 25:** *Identify the source of funds paid by you to Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to retain their legal services and the payor of these funds, including the account numbers and financial institutions from which they were drawn.*

**RESPONSE:** Defendants object to this Interrogatory as not reasonably calculated to lead *to the discovery of admissible evidence.  Information regarding the source of payments to* Defendants' attorney have no bearing on the issues of this lawsuit.

**INTERROGATORY NO. 26:** Itemize all of Plaintiffs' funds paid by you to each of the individuals identified in your initial disclosures, and for each identify the date and purpose of each payment, as well as the method of delivery (including the names of transferee financial *institutions and account numbers).*

**RESPONSE:** None of funds forwarded from Plaintiffs as down payment towards their gold dust transactions were paid to any of the individuals identified in Defendants' initial disclosures.  Some funds forwarded from Plaintiffs as down payment went to Sekou Conde's account on behalf of Chief Alimamy Kamara to pay for various expenses related to shipping *gold dust, subject to the chief's approval.*

**INTERROGATORY NO. 27:** Identify with specificity each element of the gold dust transactions, which are the subject of this lawsuit, that relate in any way to the country of Guinea and, for each, identify when you told any of the Plaintiffs about it.

**RESPONSE:** Defendants object to this Interrogatory as vague and ambiguous, as the *term "element" is undefined and subject to multiple interpretations, including a definition as a*

matter of law.  Moreover, it is not clear to Defendants what information is sought.  Subject to, and without waiving the foregoing objection, Defendants assume this Interrogatory seeks *information on how Guinea is involved in the events giving rise to this lawsuit and avers that* some gold dust to be part of the shipment giving rise to this lawsuit came from Guinea. Defendants further state that Plaintiffs knew this information since the beginning of Plaintiffs' relationship with Defendants.

**INTERROGATORY NO. 28:** Describe with specificity how the document purporting *to reflect an Ince & Co. insurance policy, naming you as policy holder, came to be in your* possession.

**RESPONSE:** This document was sent via email to Defendants by a man known to Defendant Watts by the name of Dr. Patrick Koroma.

**INTERROGATORY NO. 29:** Identify all law enforcement individuals or agencies to *whom you have reported any allegedly fraudulent conduct on the part of any third parties relative* to the subject of this lawsuit.

**RESPONSE:** Defendant Watts did not directly report any allegedly fraudulent conduct to any law enforcement individuals or agencies, but Defendants directed Sekou Conde to report the fraudulent conduct on the part of third parties relative to the subject of this lawsuit to local *police and customs in Guinea, Sierra Leone, and Ghana, and the attorney generals in Guinea and* Sierra Leone, and Interpol.

**INTERROGATORY NO. 30:** Identify the source of funds, including the bank name, owner and account number, from which you paid Plaintiffs approximately $4m in "loans" against her investment in 2012.

13

**<u>RESPONSE:</u>** Money which went back to Plaintiffs in the form of "loans" would have come from either ISR's Chase or Bank of America account in the U.S.

## VERIFICATION

STATE OF _TEXAS_

COUNTY OF _DALLAS_

I, Cleal Watts, III, make oath that I have personal knowledge of the facts asserted herein and that the facts stated in the foregoing are true and accurate to the best of my knowledge, information and belief.

_Cleal T. Watts III_
Signature

_Cleal T. Watts III MA_
Printed Name

Sworn to and subscribed before me this _27th_ day of _MARCH_ 2015.

_____
Notary Public

My Commission Expires:

_8/12/15_

ISAAC O RANGEL
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-12-15

Respectfully Submitted,

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC

Bruce A. McMullen (#18126)
Lori Patterson (# 19848)
Mary Wu (#31339)
165 Madison Ave, Suite 2000
Memphis, Tennessee 38103
(901) 526-2000
bmcmullen@bakerdonelson.com
lpatterson@bakerdonelson.com
*mwu@bakerdonelson.com*

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was forwarded via e-mail

and United States Mail this 27 day of _March_ to:

*Darrell N. Phillips*
Pietrangelo Cook PLC
6410 Poplar Avenue, Suite 190
Memphis, TN 38119
901-685-2662

16