IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MARY PHILLIPA SLEDGE, MARY
JANE PIDGEON SLEDGE TRUST, and
PIDGEON SLEDGE FAMILY LIMITED
PARTNERSHIP,

     Plaintiffs,

v.     Case No. 2:13-cv-2578-STA-cgc

INDICO SYSTEM RESOURCES, INC. and
CLEAL WATTS, III,

Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

In opposition to Plaintiff's Motion for Summary Judgment, Indico Systems Resources and Cleal Watts III rely on the facts and law set forth herein and specifically oppose summary judgment in each of the individual causes of action set forth in Plaintiff's original Complaint. Additionally, Defendants contend that the findings of fact and conclusions as set forth by Plaintiffs are flawed and inaccurate, and can only be resolved by a fact finder. FRCP 56 states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] In this case, the movant has not established that no material fact is in dispute. Further, Plaintiffs' allegations of wrongdoing and fraud are based on a false premise inconsistent with the facts.

---

[1] To win, a party must show: No genuine (i.e., triable) dispute; Of material fact (i.e., "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)); that the party is therefore, entitled to a judgment under the applicable substantive law. In considering whether a "genuine issue" exists, it is critical to remember: "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, Inc., 477 U.S. at 255. The burden of proof at trial is taken into account. Id. At 249-253.

1

1

## FACTUAL BACKGROUND

This action arises out of Plaintiff's repeated failure to execute the terms of their agreements, and is perpetuated by the false premise that Plaintiff's "investment" was to be used to purchase gold. Plaintiffs agreed and committed to deposit with Defendants an "Earnest Payment, which is 20% of desired quantity of Au." *Soft Corporate Offer*. Plaintiffs were fully aware and in agreement with the following basic premises:

1. The purpose of their Earnest Payment was to cover all costs related to export/import and refining of gold dust ore from West Africa, not to purchase any gold;
2. Said gold dust ore would continue to be wholly owned by its current registered owners until refined and sold;
3. The gold dust ore owners would release their product to the export/import and refining process under Defendants' control based on 3 conditions:
    a. The owners would continue to hold clear title to their gold dust ore until paid in full following export/import and refining;
    b. The owners would receive 20% of value of their product in advance for the purpose of funding all costs related to export, transport, import and refining;
    c. The owners would exercise management control of the export process, surrendering control to Defendants for importing to the US and refining.

714 kilograms of gold dust ore were sourced by Defendants, and Plaintiffs committed to advance an Earnest Payment to cover all costs related to export/import and refining. The gold dust ore owners agreed to process the shipment for export and eventual release to Defendants for import and refining.

2

The gold dust ore owners' confidence was based on Plaintiffs' representations that they were ready willing and able to advance the agreed upon "Earnest

Payment, which is 20% of desired quantity of Au refined value for that day." *Soft Corporate Offer*. During the referenced time frame, 714 kg of Au ranged in value from approximately $34,000,000 to over $40,000,000. As gold dust ore prices appeared to be climbing, the project had to be prepared for the high side of expenses.

Contrary to allegations, Defendant Watts is not new to the subject business. He has been working with Sierra Leone since 1983. The strength of his relationships is evidenced by his successful sourcing of 714 kg of gold dust ore, timely problem solving and preservation of the asset despite multiple attempts at theft and a participant that defaulted on their funding commitment. The gold dust ore and its value is evidenced by certificates of ownership, origination, export and shipping. Copies of these certificates are part of the record from emails admitted into evidence. Unfortunately, Defendants do not currently have access to emails, documents, or any pertinent citations, due to a yet unresolved computer crash.

The 714 kg gold dust ore shipment had been sourced, legally processed and exported, but Plaintiffs never did complete their agreed Earnest Payment. They were short by approximately $1.8 Million. Contingencies arose while the gold dust ore shipment was in transit through Guinea and again in Ghana. Attempted theft by unrelated third parties, and by the owners' own representative gave rise to legal disputes that required timely management and resolution. Plaintiffs' default on their Earnest Payment made it impossible to pay court costs, demurrage and shipping. It was well known to the Plaintiffs that the purpose of the Earnest Deposit was to cover all costs and contingencies that could arise in the export and transit of the valuable gold dust ore. Plaintiffs had been well informed of the litany of problems and

contingencies that could arise during exportation and transit. Lengthy daily telephone conversations between Plaintiff and Defendant, some which lasted through the

course of the night, covered every possible contingency. Remedies were discussed. In some cases Plaintiff recommended courses of action, and even insisted on higher insurance coverage. No stone was left unturned. It was with full knowledge that Plaintiffs executed the Soft Corporate Offer and committed to fund 20% of the gold dust ore's value. The Tribal Chiefs that owned the gold dust ore released their precious metal based on their trust that Defendants' buyer was ready willing and able to fund all costs and contingencies related to export and refining. Had Plaintiffs completed their Earnest Payment according to their agreed commitment, the common transit issues could have been resolved and the gold dust ore delivered to Dallas for refining and sale. The so-called "nuanced drama" began when Plaintiffs claimed to be unable to meet the terms of their agreement. Point of fact: The subject gold dust ore was still safely in Ghanaian custody in 2015, when it was tested and reconfirmed. It is being held in lieu of taxes and demurrages. When paid by the owners, or buyers, the gold dust ore will be released. This is the primary point that needs to be proven by the defense. Defendants have not had the time and resources to acquire documentation and negotiate release of the gold dust ore. It should be noted that the Ebola crisis literally closed down West Africa for nearly 2 years. Affected nations are just beginning to emerge from a near complete shutdown of commerce. It is once again becoming possible to reenter and conduct business.

In summary, the notion that gold should have been "purchased" with Plaintiff's "investment" is false. Plaintiffs were continuously aware that the purpose of their Earnest Payment was to pay all costs associated with the export/import and refining of gold dust ore that was owned by other parties.

4

Defendant never purported that Plaintiff's money should be used for the purchase of gold. On the contrary, Plaintiff conversed with Defendant for hours daily, openly discussing every aspect of project procedures. Earnest Payments made by Plaintiffs were for the benefit of the gold dust ore owners as an assurance that adequate funds would be available to fund the complete costs of export/import through refining. What the gold dust ore owners did with those moneys was their prerogative, so long as they fulfilled their export obligations.

Other problems were caused by Plaintiffs when they borrowed money from the gold dust ore owners to use for other short-term investments. Plaintiffs borrowed as much as $3.3 Million short-term @ 10% interest, and failed to make interest payments or meet the agreed payback schedule.

All moneys were wired to Africa by Bank Wire, Western Union, or Money Gram. If there was "a practiced and nuanced drama," it began with the Plaintiffs' filing a lawsuit replete with false and inaccurate statements that are disputed and not provable. The "investment opportunity" was not to purchase unrefined gold from West Africa, but to control unrefined gold dust ore for import and sale in the United States. There was no fraud. There were indeed several attempts at theft, but Defendants were knowledgeable and resourceful to prevent any loss. Defendants enjoyed relationships with key parties in West Africa, Europe and Texas to facilitate the export, refining and sale of gold dust ore as represented. If a party was inveigled, it was Watts and the gold dust ore owners who believed the Plaintiff was sincere and fully intended to fulfill their commitments. Defendants have been severely harmed by Plaintiffs' failure to perform, to such a continuing extent that it has not been possible to sustain a retainer for defense counsel in this lawsuit.

## **LEGAL ARGUMENT**

As illustrated below, there are genuine disputes over the material facts that comprise the causes

5

of action in this matter. Because there is a genuine dispute as to any material fact,

Plaintiffs are not entitled to judgment as a matter of law.

### I. **Summary Judgment Standard.**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Caldwell v. George*, 2015 WL 5838622, at *2 (M.D. Tenn. 2015) (citing Rule 56). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Id.* In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *Id.* The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Id.*

The Plaintiff further cites courts in the Sixth Circuit and beyond having granted summary judgment to plaintiffs on their fraud claims. A clear difference in this case is that the Defendants have not yet been able to collect and present the existing body of hard evidence and testimony that refutes the Plaintiff's claims of fraud. Defendants are entitled to a trial for proper presentation of their case. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255. The burden of proof at trial is taken into account. *Id.* at 249-253. The materials cited by Plaintiffs do not establish the absence of a genuine dispute. FRCP 56(c)(1)(A).

6

To establish a claim for fraudulent misrepresentation, a plaintiff must show that: (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation. *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn.Ct.App. 2012).[2] "Recklessness" means carelessness as to whether the facts are true or false or without belief in their truth. *Menuskin v. Williams*, 145 F.3d 755, 764-65. Plaintiffs have not established the falsity of any of Defendants' claims, but have covered material facts that do not support their claims.[3]

It must be emphasized that the facts are to be viewed and inferences drawn in the Defendants' favor.

CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs summary judgment as to their entire Complaint, and should not award any damages, nor attorneys' fees and costs incurred in this litigation.

Respectfully Submitted,

Cleal Watts III _____ February 4, 2016

---

[2] A party asserting a fraud claim must show its elements by a preponderance of the evidence. Elchlepp v. Hatfield, 294 S.W.3d 146, 150 (Tenn. Ct. App. 2008).

[3] See *Certificates of Origination, Certificates of Ownership* and supporting *Shipping Documents* for 714 kilograms gold dust ore.

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 4th day of February 2016, a copy of the foregoing document was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party.

US District Court
Western District of Tennessee
Attn: S. Thomas Anderson
167 N. Main Street, Ste 242
Federal Building
Memphis TN 38103

Pietrangelo Cook PLC
Darrell N. Phillips
6410 Poplar Avenue, Suite 190
Memphis, TN 38119

*Marie Watts*
Marie Watts

2-4-16

8